1  Jean-Jacques Cabou (Bar No. 022835)
2  PERKINS COIE LLP
   2901 North Central Avenue, Suite 2000
3  Phoenix, Arizona 85012-2788
   Telephone:  602.351.8000
4  Facsimile:   602.648.7000
   JCabou@perkinscoie.com
5  DocketPHX@perkinscoie.com

6  *Attorneys for Defendant Twitter, Inc.*

7              UNITED STATES DISTRICT COURT

8                  DISTRICT OF ARIZONA

9   Craig R. Brittain, an individual and US Senate
    candidate in Arizona in the 2018 Federal          No. 18-cv-01714-PHX-DGC
10  Elections;

11  Brittain For US Senate, a Principal Campaign       **MOTION TO DISMISS**
    Committee (And on behalf of all similarly          **AMENDED COMPLAINT AND**
12  affected users of Twitter).                        **MEMORANDUM OF POINTS**
                                                       **AND AUTHORITIES IN**
13                    Plaintiffs,                      **SUPPORT**

14        v.

15  Twitter, Inc., a California corporation,

16                    Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TWITTER, INC.'S MOTION TO DISMISS AMENDED COMPLAINT ........................ 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
TWITTER, INC.'S MOTION TO DISMISS AMENDED COMPLAINT ........................ 1

I.    INTRODUCTION ........................................................... 1

II.   BACKGROUND ............................................................ 2

    A.    Plaintiffs' Allegations ......................................... 2

    B.    Twitter's Terms of Service ...................................... 3

    C.    Procedural Background ........................................... 4

III.  ARGUMENT .............................................................. 4

    A.    Plaintiffs Have Not Pled Any Viable Claim Against Twitter. ...... 5

        1.    Plaintiffs' First Amendment Claim Fails. ................ 5

        2.    Plaintiffs' claim for violation of federal election rules
            fails. ................................................. 6

        3.    Plaintiffs' breach of contract claim fails. ............. 6

        4.    Plaintiffs' conversion claim fails. ..................... 8

        5.    Plaintiffs' antitrust claim fails. ...................... 9

        6.    Plaintiffs' negligent infliction of emotional distress
            claim fails. .......................................... 10

        7.    Plaintiffs' tortious interference claim fails. .......... 10

        8.    Plaintiffs' promissory estoppel claim fails. ............ 11

    B.    Plaintiff Brittain for Senate Cannot Appear *Pro Se*. ........... 12

    C.    Plaintiff's Claims Are Barred by the Communications
        Decency Act. ................................................... 13

        1.    Twitter Provides an Interactive Computer Service ....... 14

        2.    Plaintiff's claims treat Twitter as a publisher ........ 14

        3.    Another information content provider posted the
            content. .............................................. 15

    D.    The First Amendment Bars Plaintiff's Claims. ................... 16

    E.    Plaintiffs Should Be Denied Leave to Amend. ................... 16

IV.   CONCLUSION ........................................................... 17

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Am. Freedom Def. Initiative v. Lynch*,

5

217 F. Supp. 3d 100 (D.D.C. 2016) ................................................................ 14

6

*Ascherman v. Presbyterian Hosp. of Pac. Med. Ctr., Inc.*,

7

507 F.2d 1103 (9th Cir. 1974) ........................................................................ 5

8

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ......................................................................................... 5

9

*Barnes v. Yahoo!, Inc.*,

10

570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ................ 13, 15

11

*Bell Atl. Corp. v. Twombly*,

12

550 U.S. 544 (2007) ........................................................................................ 4

13

*Bradley v. JP Morgan Chase Bank, Nat'l Ass'n*,

No. CV13-00814-PHX DGC, 2013 WL 2563326 (June 11, 2013) ............... 3

14

*Brite Smart Corp. v. Google, Inc.*,

15

No. 5:15-cv-03962-BLF, 2016 WL 1070667 (N.D. Cal. Mar. 18, 2016) .... 13

16

*Burgess v. Superior Court*,

17

831 P.2d 1197 (Cal. 1992) ............................................................................ 10

18

*Cal. Grocers Assn. v. Bank of Am.*,

19

22 Cal. App. 4th 205 (1994) ........................................................................... 7

20

*CalFarm Ins. Co. v. Krusiewicz*,

131 Cal. App. 4th 273 (2005) ....................................................................... 12

21

*Caraccioli v. Facebook, Inc.*,

22

167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...................................................... 3, 7

23

*Casterlow-Bey v. Google Internet Search Engine Co.*,

24

No. 3:17-cv-05621-RBL-JRC, 2017 WL 6876215 (W.D. Wash. Sept. 26,

2017), *report and recommendation adopted*, No. 3:17-cv-05621-RBL-

25

JRC, 2017 WL 6882978 (W.D. Wash. Oct. 23, 2017) ................................... 5

26

*Chanay v. Chittenden*,

27

563 P.2d 287 (Ariz. 1977) .............................................................................. 7

28

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
    473 U.S. 788 (1985) .......................................................................................... 6

*Cross v. Facebook*,
    14 Cal. App. 5th 190 (2017) .............................................................................. 8

*Dehen v. Does 1-100*,
    No. 17cv198-LAB (WCG), 2018 WL 4502336 (S.D. Cal. Sept. 19,
    2018) ................................................................................................................ 16

*Distance Learning Co. v. Silly Monkey Studios, LLC*,
    No. 16-cv-06943-SK, 2017 WL 9613958 (N.D. Cal. Feb. 14, 2017) .......................... 11

*Dube v. Likins*,
    167 P.3d 93 (Ariz. Ct. App. 2007) ................................................................... 10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ................................................... 13, 14

*Fields v. Twitter, Inc.*,
    217 F. Supp. 3d 1116 (N.D. Cal. 2016) ........................................................... 14

*Frenken v. Hunter*,
    No. 17-cv-02667-HSG, 2018 WL 1964893 (N.D. Cal. Apr. 26, 2018) ...................... 16

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    343 F.3d 1000 (9th Cir. 2003) ......................................................................... 10

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003).............................................................................. 14

*Gullett ex rel. Estate of Gullett v. Kindred Nursing Ctrs. W., L.L.C.*,
    390 P.3d 378 (Ariz. Ct. App. 2017)................................................................... 7

*Hisun Motors Corp., U.S.A. v. Auto. Testing & Dev. Servs., Inc.*,
    No. CV11-1918-PHX-DGC, 2012 WL 682398 (D. Ariz. Mar. 2, 2012) ................... 12

*Howard v. Am. Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................................. 5

*In re Estate of Shiya*,
    No. 1 CA-CV 11-0492, 2012 WL 4569266 (Ariz. Ct. App. Oct. 2, 2012) ................. 12

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

3

4

*Jian Zhang v. Baidu.com, Inc.*,
     10 F. Supp. 3d 433 (S.D.N.Y. 2014).....................................................16

5

6

*Joffe v. City of Huntington Park*,
     201 Cal. App. 4th 492 (2011) ...............................................................12

7

*Johnson Int'l, Inc. v. City of Phoenix*,
     967 P.2d 607 (Ariz. Ct. App. 1998)................................................11, 12

8

9

*Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth.*,
     23 Cal. 4th 305 (2000) .........................................................................11

10

11

*Klembeck v. GTE Corp.*,
     32 F. App'x 410 (9th Cir. 2002) .............................................................7

12

13

*Knievel v. ESPN*,
     393 F.3d 1068 (9th Cir. 2005) ................................................................3

14

*Knight First Amendment Center v. Trump*,
     Case No. 1:17-cv-05205 (S.D.N.Y. filed July 11, 2017)..........................2

15

16

*Korea Supply Co. v. Lockheed Martin Corp.*,
     29 Cal. 4th 1134 (2003) ..................................................................10, 11

17

18

*Kremen v. Cohen*,
     337 F.3d 1024 (9th Cir. 2003) ................................................................9

19

20

*La'Tiejira v. Facebook, Inc.*,
     272 F. Supp. 3d 981 (S.D. Tex. 2017) ..................................................16

21

*Ladas v. Cal. State Auto. Assn.*,
     19 Cal. App. 4th 761 (1993) .................................................................12

22

23

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
     60 Cal. App. 3d 885 (1976) ..................................................................12

24

25

*Lee v. Hanley*,
     354 P.3d 334 (Cal. 2015) ........................................................................8

26

*Lloyd Corp. v. Tanner*,
     407 U.S. 551 (1972)................................................................................6

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Loos v. Lowe's HIW, Inc.*,
   796 F. Supp. 2d 1013 (D. Ariz. 2011) ......................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................... 10

*McCarthy v. Nat'l Broad. Co.*,
   162 F.3d 1148 (2d Cir. 1998).......................................................................... 6

*Mezey v. Twitter*,
   No. 1:18-cv-21069-KMM, 2018 WL 5306769 (S.D. Fla. July 19, 2018)....... 14, 15, 17

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974)...................................................................................... 16

*Miles v. California*,
   320 F.3d 986 (9th Cir. 2003) ......................................................................... 8

*Miller v. Hehlen*,
   104 P.3d 193 (Ariz. Ct. App. 2005).......................................................... 8, 9

*Neonatology Assocs., Ltd. v. Phx. Perinatal Assocs. Inc.*,
   164 P.3d 691 (Ariz. Ct. App. 2007)............................................................. 11

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
   802 F.3d 1049 (9th Cir. 2015) ..................................................................... 10

*Oasis W. Realty, LLC v. Goldman*,
   250 P.3d 1115 (Cal. 2011) ............................................................................. 6

*Pac. Express, Inc. v. United Airlines, Inc.*,
   959 F.2d 814 (9th Cir. 1992) ......................................................................... 9

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
   460 U.S. 37 (1983)......................................................................................... 5

*Porter v. Twitter*,
   Case No. 3:16-cv-06136 (N.D. Cal. filed Oct. 24, 2016) ............................. 2

*Prager Univ. v. Google LLC*,
   No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018)....................... 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Prosterman v. Am. Airlines, Inc.*,
   No. 16-cv-02017-MMC, 2016 WL 7157667 (N.D. Cal. Dec. 8, 2016) ...................... 10

*Romien v. Stanton*,
   No. CV-16-00604-PHX-JJT, 2017 WL 131571 (D. Ariz. Jan. 13, 2017)................... 13

*Rowland v. Cal. Men's Colony*,
   506 U.S. 194 (1993)................................................................................................... 12

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ..................................................................................... 16

*Schwarzkopf v. Int'l Bus. Mach., Inc.*,
   No. C08-2715-JF(HRL), 2010 WL 1929625 (N.D. Cal. May 12, 2010) ...................... 7

*Sciortino v. PepsiCo, Inc.*,
   No. 14-cv-00478-EMC, 2015 WL 13426192 (N.D. Cal. Nov. 30, 2015)................... 13

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir.
   Sept. 13, 2017) .................................................................................................... 14, 15

*Simon v. Hartford Life, Inc.*,
   546 F.3d 661 (9th Cir. 2008) ..................................................................................... 13

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ....................................................................................... 3

*Taylor v. Twitter*,
   Case No. CGC-18-564460 (S.F. Superior Court).................................................... 2, 8

*Thomas v. Montelucia Villas, LLC*,
   302 P.3d 617 (Ariz. 2013)............................................................................................ 6

*Turner Broad. Sys., Inc. v. F.C.C.*,
   512 U.S. 622 (1994).................................................................................................... 16

*Twitter, Inc. v. The Superior Court for the City and County of San
   Francisco*, Case No. A154973 (Cal. Ct. App. Aug. 17, 2018)...................................... 8

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................... 2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Weahunt v. Cal. Reconveyance Co.*,
   No. CIV. S-10-2299 KJM, 2012 WL 1594212 (E.D. Cal. May 4, 2012),
   *report and recommendation adopted*, 2012 WL 13046343 (E.D. Cal.
   Sept. 12, 2012) ........................................................................................ 2

*Weiss v. L.A. Broad. Co.*,
   163 F.2d 313 (9th Cir. 1947) ................................................................... 6

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) .................................................................. 11

*Wright v. Incline Vill. Gen. Improvement Dist.*,
   665 F.3d 1128 (9th Cir. 2011) ................................................................. 5

*Yari v. Producers Guild of Am., Inc.*,
   161 Cal. App. 4th 172 (2008) ................................................................ 11

*Young v. Facebook, Inc.*,
   No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304
   (N.D. Cal. Oct. 25, 2010) ........................................................................ 5

**STATUTES**

15 U.S.C. § 2 ............................................................................................. 4, 9

47 U.S.C. § 153(30) ....................................................................................... 6

47 U.S.C. § 230 ..................................................................................... passim

47 U.S.C. § 315 .......................................................................................... 4, 6

**RULES**

Fed. R. Civ. P. 8 ................................................................................... 2, 4, 16

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 3

Fed. R. Evid. 201 .......................................................................................... 8

**OTHER AUTHORITIES**

18 Am.Jur.2d, Conversion § 7 (2004) ......................................................... 9

U.S. Const. amend. I .......................................................................... passim

### TWITTER, INC.'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant Twitter, Inc. ("Twitter") moves under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the Amended Complaint of Plaintiffs Craig R. Brittain and Brittain for Senate ("Plaintiffs") because they have not stated and cannot state any claim for relief. First, each of Plaintiffs' claims is inadequately pled and fails as a matter of law. Second, Plaintiffs' claims are barred by the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), and the First Amendment to the U.S. Constitution. These deficiencies are incurable, and Plaintiffs should be denied leave to amend.

This motion is supported by the following memorandum of points and authorities, any exhibits in support, the record in this case, and any reply and oral argument.

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TWITTER, INC.'S MOTION TO DISMISS AMENDED COMPLAINT

## I.   INTRODUCTION

Plaintiffs Craig R. Brittain and Brittain for US Senate's ("Plaintiffs") claims against Defendant Twitter, Inc. ("Twitter") should be dismissed with prejudice.

Twitter is a free online service that allows users all over the world to communicate through short messages called "Tweets" using unique account names called "handles." To use Twitter's platform, users must agree to Twitter's Terms of Service ("Terms").

Plaintiffs had Twitter accounts, agreed to Twitter's Terms, and used Twitter's platform, and Twitter ultimately suspended their accounts. Plaintiffs now complain that this suspension was "illegal" and "unlawful," referencing lawsuits brought by other litigants and amicus briefing in those cases rather than pleading facts regarding their own termination. They attempt to assert eight separate legal theories against Twitter arising from the suspension.

Twitter cannot be liable for suspending Plaintiffs from their service under any of Plaintiffs' theories. First, Twitter is a private service, not a state actor or a public forum within the First Amendment meaning, and it cannot be liable for alleged constitutional violations. Second, Twitter and its users are regulated by the Terms, which enshrine

1   Twitter's discretion to suspend accounts and therefore undermine Plaintiffs' claims. Third,

2   Plaintiffs have not pled even the most basic elements of their claims. And even if they had,

3   their claims all arise from Twitter's protected publisher conduct and are therefore barred by

4   the Communications Decency Act, 47 U.S.C. § 230 ("CDA"). Lastly, under the First

5   Amendment to the U.S. Constitution, Twitter cannot be forced to host Plaintiffs' accounts.

6         Accordingly, the Court should dismiss Plaintiff's Amended Complaint and, because

7   Plaintiffs have already had one opportunity to amend their complaint and the remaining

8   deficiencies are incurable, dismissal should be without leave to amend.

## II.   BACKGROUND

### A.   Plaintiffs' Allegations

11        Plaintiffs Craig R. Brittain, a purported candidate for the U.S. Senate in Arizona, and

12  Brittain for US Senate, his campaign committee, brought this action against Twitter arising

13  from termination of their Twitter accounts.[1]  *See* Dkt. No. 13 ("FAC") ¶¶ 1, 4, 11, 14.

14  Plaintiffs suggests that this termination was "illegal" and "unlawful," although they fail to

15  allege any facts surrounding the termination. *Id.* ¶¶ 4, 14. Instead, Plaintiffs ask the Court

16  to "please read in full" various cases to which they are not parties—*Taylor v. Twitter*, Case

17  No. CGC-18-564460 (San Francisco Superior Court), *Knight First Amendment Center v.*

18  *Trump*, Case No. 1:17-cv-05205 (Southern District of New York), and *Porter v. Twitter*,

19  Case No. 3:16-cv-06136  (Northern District of California)—along with all related amicus

20  briefs. *Id.* ¶ 1.[2]

21

22      [1] The accounts at issue are @CraigRBrittain, @AuditTheMedia, @SenatorBrittain, and @Brittain4Senate. FAC ¶¶ 11, 12.

23      [2] Attempting to incorporate allegations from other cases is a "violation of Rule

24  8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Int'l Longshoremen's Ass'n*,

25  518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007); *see also Weahunt v. Cal. Reconveyance Co.*, No. CIV. S-10-2299 KJM, 2012 WL 1594212, at *3 (E.D. Cal. May 4, 2012) (complaint

26  did not "comply with federal pleading standards" because, among other reasons, "portions of the complaint appear to have been copied and pasted from briefs in other cases," and

27  dismissal with leave to amend "would be warranted on this basis"), *report and recommendation adopted*, 2012 WL 13046343 (E.D. Cal. Sept. 12, 2012). This Court has

28  already warned Plaintiffs once about the need to comply with the requirement that a complaint be "short and plain." This failure to comply, again, warrants dismissal.

1    While acknowledging Twitter's Terms of Service (the "Terms"), which govern the
2    relationship between Twitter and its users, Plaintiffs claim that they have an unrestricted
3    right to maintain Twitter accounts based on principles of freedom of speech. *Id.* ¶¶ 3, 4, 18-
4    20; *see also* Decl. of Courtney Smith in Supp. of Mot. to Transfer, Dkt. 23 ("Smith Decl."),
5    Exs. C-D.[3]  In particular, Plaintiffs maintain that Twitter is a public forum for free speech
6    based on conclusions about funding from Barack Obama and the federal government, as
7    well as "admissions" by Twitter regarding its status as a public forum that they never
8    identify. FAC ¶¶ 4,14. Plaintiffs are clear that these allegations are intended to try to
9    overcome the immunity that Twitter is entitled to under the CDA. *Id.* ¶ 4.

10    Plaintiffs also insert allegations regarding licensed cable broadcast networks and
11    purported anticompetitive practices. *Id.* ¶¶ 5, 6. Plaintiffs allege that Twitter has business
12    partnerships with CNN, Fox, MSNBC, and other cable networks that "extend the broadcast
13    licenses of those networks into Twitter's business space." *Id.* From this leap, Plaintiffs
14    conclude that Twitter must also provide the same "broadcast access" to all candidates. *Id.*
15    Plaintiffs also claim that Twitter is a major player in the social media market, and there is a
16    lack of new major players, so they reason that Twitter "must be reorganized." *Id.* ¶ 6.

17    **B.    Twitter's Terms of Service**
18    To create an account, a user must accept Twitter's Terms. Smith Decl., Exs. C-D.

19

---

20    [3] The Court may consider Twitter's Terms without converting the motion to dismiss
      into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.
21    2005) (holding that documents that a defendant attaches to a motion to dismiss are
      considered part of the pleadings if no one disputes their authenticity, they are referred to in
22    the plaintiffs' complaint, and they are central to their claim); *Caraccioli v. Facebook, Inc.*,
      167 F. Supp. 3d 1056, 1062-64 (N.D. Cal. 2016) (relying on Facebook's terms of service
23    and dismissing claims under Rule 12(b)(6)); *Bradley v. JP Morgan Chase Bank, Nat'l
      Ass'n*, No. CV13-00814-PHX DGC, 2013 WL 2563326, at *1 (June 11, 2013) (considering
24    a Pooling and Servicing Agreement attached to a motion to dismiss under Rule 12(b)(6)
      where plaintiffs did "not contest the authenticity of the document" and plaintiffs' complaint
25    "allege[d] its content and the document is central to Plaintiffs' claims"). The Terms are
      central to Plaintiffs' claims, and Plaintiffs explicitly rely on them. FAC ¶¶ 2, 18-20, 27;
26    Compl. ¶¶ 79-80, 85-89. They cannot cherry-pick only those portions that they believe
      support their claims. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (noting
27    the incorporation by reference doctrine "[p]revent[s] plaintiffs from surviving a Rule
      12(b)(6) motion by deliberately omitting documents upon which their claims are based")
28    (internal ellipsis and citation omitted).

And Plaintiffs acknowledge that that the Terms are a binding agreement between the parties. FAC ¶¶ 20, 27. The Terms provide that a user's rights to access and use an account are at Twitter's discretion, and that Twitter may modify its service or terminate accounts in its sole discretion at "any time for any reason, including, but not limited to, if we [i.e., Twitter] reasonably believe: (i) you [i.e., the user] have violated these Terms or the Twitter Rules . . . ." Smith Decl., Ex. C § 10; *see also id.*, Ex. D § 4. For example, Twitter "may stop (permanently or temporarily) providing the Services (or any features within the Services) to you[.]" *Id.*, Ex. C § 1; *id.*, Ex. D § 4. Twitter is entitled to "create limits on use and storage at our sole discretion at any time," and it may "remove or refuse to distribute any Content on the Services, suspend or terminate users, and reclaim usernames without liability to you." *Id.* Moreover, Twitter is not liable for harm arising from the inability to use its services. *See id.*, Ex. C § 12(C) (disclaiming liability for any damages or other harm "resulting from . . . your access to or use of or inability to access or use the services" (capitalization omitted)); *id.*, Ex. D § 5 (same).

### C.    Procedural Background

Plaintiffs brought this action on June 5, 2018. Dkt. 1. On June 22, 2018, the Court dismissed Plaintiff's Complaint because it was "not close to the 'short and plain' statement of claims required by Rule 8." Dkt. 12 at 2. Although it contained nine claims, the Complaint was "78 pages long and contains more than 200 paragraphs of factual allegations and claims." *Id.* Days later, Plaintiffs filed an "abridged" Amended Complaint, asserting claims for (1) violation of the First Amendment, (2) violation of Federal Election rules, 47 U.S.C. § 315, (3) breach of contract, (4) conversion, (5) violation of antitrust laws, 15 U.S.C. § 2, (6) negligent infliction of emotional distress, (7) tortious interference, and (8) promissory estoppel. FAC ¶¶ 30-31. Plaintiffs seek to enjoin Twitter from suspending or regulating accounts in the future. FAC at p. 9.

### III.    ARGUMENT

To state a claim upon which relief can be granted, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

1    *Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks and citation omitted). "To

2    survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

3    true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

4    678 (2009) (internal quotation marks omitted).

5            **A.**    **Plaintiffs Have Not Pled Any Viable Claim Against Twitter.**

6           None of Plaintiffs' purported causes of actions against Twitter state a legally

7    cognizable claim. Plaintiffs' claims against Twitter should be dismissed with prejudice.

8              **1.**    **Plaintiffs' First Amendment Claim Fails.**

9           Plaintiffs cannot maintain a First Amendment claim against Twitter because Twitter

10   is a private company, not a state actor. *See, e.g.*, *Howard v. Am. Online, Inc.*, 208 F.3d 741,

11   754 (9th Cir. 2000) (finding that AOL was not subject to the First Amendment); *Prager*

12   *Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar.

13   26, 2018) ("[C]ourts have declined to treat . . . private social media corporations [similar to

14   Google], as well as online service providers, as state actors.") (internal citation omitted).[4]

15   Plaintiffs' bald allegation that Twitter received support from President Barack Obama and

16   the federal government does not change the analysis. FAC ¶ 4; *Ascherman v. Presbyterian*

17   *Hosp. of Pac. Med. Ctr., Inc.*, 507 F.2d 1103, 1105 (9th Cir. 1974) (holding that the mere

18   receipt of federal funds is insufficient to show state action).

19          Nor is Twitter a public forum. *See Wright v. Incline Vill. Gen. Improvement Dist.*,

20   665 F.3d 1128, 1137 (9th Cir. 2011) ("[T]he general public does not generally have a First

21   Amendment right to access private property for expression."). Twitter is not a space like a

22   street or a park "which by long tradition or by government fiat have been devoted to

23   assembly and debate," *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45

24   (1983), nor was Twitter "created by government designation of a place or channel of

25   _____

26       [4] *See also, e.g.*, *Casterlow-Bey v. Google Internet Search Engine Co.*, No. 3:17-cv-
     05621-RBL-JRC, 2017 WL 6876215, at *1 (W.D. Wash. Sept. 26, 2017), *report and*

27   *recommendation adopted*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6882978 (W.D. Wash.
     Oct. 23, 2017) (holding that Google "is not a state actor"); *Young v. Facebook, Inc.*, No.

28   5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010) (holding that
     Facebook is not a state actor).

communication for use by the public at large for assembly and speech. . . ." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). That Twitter facilitates speech by registered users on its platform, subject to its Terms, does not transform the nature of its services. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972) ("[P]roperty [does not] lose its private character merely because the public is generally invited to use it for designated purposes.").

### 2. Plaintiffs' claim for violation of federal election rules fails.

Plaintiffs cannot assert a claim for violation of federal election rules under 47 U.S.C. § 315[5] because there is no private right of action. *See, e.g.*, *McCarthy v. Nat'l Broad. Co.*, 162 F.3d 1148 (2d Cir. 1998). In any event, Plaintiffs have not alleged and cannot allege that Twitter is a licensee required to permit equal opportunities to all candidates on their "broadcasting station." *Weiss v. L.A. Broad. Co.*, 163 F.2d 313, 315 (9th Cir. 1947); *see also* 47 U.S.C. § 153(30) (defining licensee as "the holder of a radio station license granted or continued in force under authority of this chapter"). Plaintiffs' claim that Twitter's "business partnerships with CNN, Fox, MSNBC and many other cable networks" "extend the broadcast licenses of those networks into Twitter's business space" is a meritless legal conclusion that should be disregarded. FAC ¶ 5.

### 3. Plaintiffs' breach of contract claim fails.

Plaintiffs' breach of contract claim is based on the untenable premise that Twitter lacks the authority to suspend accounts. FAC ¶ 19. For a breach of contract claim, a plaintiff must establish the existence of a contract and that the defendant breached a duty under the contract. *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011); *cf. Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013).[6]

---

[5] The statute provides that "[i]f any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station." *Id.*

[6] Under the Terms' choice-of-law provision, California law governs Plaintiffs' claims. *See* Smith Decl., Ex. C § 12(B) ("These Terms and any action related thereto will be governed by the laws of the State of California without regard to or application of its conflict of law provisions or your state or country of residence."); *id.*, Ex. D § 6 ("The laws

1    Plaintiffs have not alleged and cannot allege the existence of any contract where

2    Twitter undertook an obligation not to terminate accounts. The only contract between the

3    parties at issue is Twitter's Terms, FAC ¶¶ 19, 20, 31, which expressly enshrine Twitter's

4    discretion to terminate accounts. *See* Smith Decl., Ex. C § 8 ("We reserve the right at all

5    times (but will not have an obligation) to . . . suspend or terminate users . . . without liability

6    to you."); *id.* § 10 ("We may suspend or terminate your accounts or cease providing you

7    with all or part of the Services at any time for any reason . . . ."); *id.*, Ex. D § 4 ("We may

8    also remove or refuse to distribute any Content on the Services, suspend or terminate users,

9    and reclaim usernames without liability to you."); *id.* ("We may suspend or terminate your

10   account or cease providing you with all or part of the Services at any time for any or no

11   reason . . . .").[7]

12   Plaintiffs' unconscionability allegations are irrelevant. FAC ¶ 19. Unconscionability

13   is an affirmative defense against a claim for breach of contract. *Cal. Grocers Assn. v. Bank

14   of Am.*, 22 Cal. App. 4th 205, 213 (1994) ("Unconscionability operates as a defense to

15   enforcement of a contract of adhesion."); *Gullett ex rel. Estate of Gullett v. Kindred Nursing

16   Ctrs. W., L.L.C.*, 390 P.3d 378, 381 (Ariz. Ct. App. 2017) ("Claims of substantive or

17   procedural unconscionability are independent defenses to enforceability."). Therefore,

18   Plaintiffs cannot invoke the doctrine of unconscionability to state a breach of contract claim.

19   *Cf. Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) ("Here, it is

20   Plaintiff, not Facebook, who asserts a breach of contract claim based on the Terms of

21   _____

22   of the State of California, excluding its choice of law provisions, will govern these Terms
     and any dispute that arises between you and Twitter."). Because Plaintiffs' claims fail under
     Arizona law as well, however, this motion cites cases from both jurisdictions.

23       [7] Under the circumstances, there cannot be any implied obligation not to terminate
24   accounts as well. *Klembeck v. GTE Corp.*, 32 F. App'x 410, 411 (9th Cir. 2002) (holding
     that where an "alleged implied contract . . . would directly contradict the express
25   terms[,] . . . the express contractual terms control. . . ."); *see also Schwarzkopf v. Int'l Bus.
     Mach., Inc.*, No. C08-2715-JF(HRL), 2010 WL 1929625, at *8 (N.D. Cal. May 12, 2010)
26   (where the parties have an express written agreement, it "sets the boundaries for any implied
     contract"); *Chanay v. Chittenden*, 563 P.2d 287, 290 (Ariz. 1977) ("There can be no implied
27   contract where there is an express contract between the parties in reference to the same
     subject matter . . . [meaning that even if a party] may have been able to prove an implied
28   agreement . . . under some equitable theory, he [can] only [do] . . . so if there were no
     express agreement to the contrary.").

1   Service. He therefore cannot attempt to counter Facebook's arguments with defenses

2   reserved for a defendant.").

3       Finally, Plaintiffs reference to *Taylor v. Twitter* merely underscores the weakness of

4   Plaintiffs' claims against Twitter, including for breach of contract. FAC ¶ 19. There, Twitter

5   banned the plaintiff for association with a violent extremist group in violation of Twitter's

6   Terms. *See* Exhibit 1.[8] The trial court in that action overruled in part Twitter's demurrer,

7   concluding that Taylor had sufficiently alleged a violation of California's Unfair

8   Competition Law based on alleged unconscionability of Twitter's Terms. *Id.* This decision

9   was swiftly overturned on a discretionary writ by the Court of Appeal, which held that the

10  plaintiff's claims arose from Twitter's decision to suspend the account, which is protected

11  publisher activity under the CDA. *Id.* (citing *Cross v. Facebook*, 14 Cal. App. 5th 190, 200-

12  01, 206-07 (2017)).

13              **4.      Plaintiffs' conversion claim fails.**

14      Plaintiffs' conversion claim similarly fails. "Conversion is the wrongful exercise of

15  dominion over the property of another. The elements of a conversion claim are: (1) the

16  plaintiff's ownership or right to possession of the property; (2) the defendant's conversion

17  by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 354

18  P.3d 334, 344 (Cal. 2015) (quotation omitted); *cf. Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz.

19  Ct. App. 2005) ("Conversion is an intentional exercise of dominion or control over a chattel

20  which so seriously interferes with the right of another to control it that the actor may justly

21  be required to pay the other the full value of the chattel.").

22      Here, even assuming Plaintiffs could show a property interest in their accounts,[9]

23

24      [8] Judicial notice is properly taken of the Order Issuing Alternative Writ of Mandate
    issued by the California Court of Appeal in *Twitter, Inc. v. The Superior Court for the City*
25  *and County of San Francisco*, Case No. A154973, attached as Exhibit 1 to this motion. *See*
    Fed. R. Evid. 201; *Miles v. California*, 320 F.3d 986, 987 n.1 (9th Cir. 2003) (taking judicial
26  notice of California court's order after issuance of writ of mandate).
      [9] Plaintiffs cannot make this showing. *See* Smith Decl., Ex. C § 7 ("All right, title,
27  and interest in and to the Services (excluding Content provided by users) are and will remain
    the exclusive property of Twitter and its licensors."); *id.*, Ex. D § 4 (same). However, it is
28  not necessary for the Court to reach this issue.

Plaintiffs cannot show a wrongful act by Twitter that interfered with Plaintiffs' rights. The Terms are clear that Twitter retains the discretion to suspend accounts where appropriate. *See* Smith Decl., Ex. C. § 8; *id.*, Ex. D § 4.[10]  At most, Twitter merely exercised its discretion to terminate Plaintiffs' accounts. FAC ¶ 14.

### 5. Plaintiffs' antitrust claim fails.

Plaintiffs' claim for violation of antitrust laws fails because it is conclusory. FAC ¶ 24 ("Defendant violated 15 U.S. Code § 2 by engaging or attempting to engage in anticompetitive practices, evident by maintaining market control and profitability in spite of the lack of a superior product and conditions which would bankrupt a non-monopoly."). Indeed, Plaintiffs do not allege any facts supporting the elements of actual or attempted monopolization. Actual monopolization requires: "(1) Possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992) (internal citation omitted). Attempted monopolization requires: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Id.* At most, Plaintiffs allege that six well-known social media brands collectively "control a combined 90% of the social media network market." FAC ¶ 6. This is insufficient to show intent, specific anticompetitive conduct, or antitrust injury.

In addition, Plaintiffs' allegation that there are six powerful players in the social media market defeats their antitrust claim because it suggests, at most, that a small number of competitors are "engaged in conscious parallelism," which is not actionable. *See*

---

[10] Separately, although California law applies and recognizes that intangible property can be the subject of conversion, Plaintiffs claim would fail under Arizona law—which generally does not recognize purported conversion of intangible property. *Compare Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) ("California does not follow the *Restatement's* strict requirement that some document must actually represent the owner's intangible property right [and] courts routinely apply the tort to intangibles without inquiring whether they are merged in a document . . . ."), *with Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) ("An action for conversion ordinarily lies only for personal property that is tangible, or to intangible property that is merged in, or identified with, some document." (quoting 18 Am.Jur.2d, Conversion § 7 (2004))).

*Prosterman v. Am. Airlines, Inc.*, No. 16-cv-02017-MMC, 2016 WL 7157667, at *3 (N.D. Cal. Dec. 8, 2016) (dismissing similar claim where plaintiff alleged "the domestic airline passenger industry is a tight oligopoly in that four carriers control approximately 80 percent of the market" (internal quotation marks omitted)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[C]onduct [that is] as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.").[11]

### 6.    Plaintiffs' negligent infliction of emotional distress claim fails.

Plaintiffs also have not stated a claim for negligent infliction of emotional distress ("NIED"). Under California law, Plaintiffs are not a "witness to the injury of another" and they did not suffer the alleged distress as a result of Twitter's breach of a duty. *Burgess v. Superior Court*, 831 P.2d 1197, 1200 (Cal. 1992). Again, Twitter retained the discretion to terminate accounts—and it never obligated itself to maintain Plaintiffs' accounts. Separately, under Arizona law, Plaintiffs do not allege that they witnessed an injury to a closely related person while in the zone of danger at the time of the injury. *See Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1020 (D. Ariz. 2011).

### 7.    Plaintiffs' tortious interference claim fails.

Plaintiffs also cannot show interference with prospective business relations, which requires: (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003); *cf. Dube v. Likins*, 167 P.3d 93, 98 (Ariz. Ct. App. 2007) (describing

---

[11] Plaintiffs also lack standing. To satisfy the antitrust-injury requirement, a plaintiff must show 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1066 (9th Cir. 2015) (quoting *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1007–08 (9th Cir. 2003)). Plaintiffs' alleged loss of followers is unrelated to any alleged anti-competitive conduct.

1  similar elements under Arizona law). In addition, a plaintiff must allege an "independently

2  wrongful act." *Korea Supply Co.*, 29 Cal. 4th at 1158; *Neonatology Assocs., Ltd. v. Phx.*

3  *Perinatal Assocs. Inc.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007) ("To be actionable,

4  interference must be *both* intentional and improper [meaning that] . . . liability must be

5  based on more than the act of interference alone" (citation and internal quotation marks

6  omitted)).

7          Plaintiffs cannot establish these elements. First, a defendant's tortious conduct must

8  interfere with a specific existing economic relationship, not with the hope of forming

9  economic relationships in the future. *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42

10  Cal. App. 4th 507, 525 (1996). Plaintiffs have not alleged any such relationship. Moreover,

11  Plaintiffs have not shown and cannot shown any intention on Twitter's part to disrupt any

12  such relationships. *Korea Supply Co.*, 29 Cal. 4th at 1164-65 (showing intent "requires a

13  plaintiff to plead . . . that the defendant acted either with the desire to interfere or the

14  knowledge that interference was certain or substantially certain to occur as a result of its

15  action."). Finally, Plaintiffs have not alleged an "independently wrongful act." *Id.* at 1158.

16  Twitter's termination of Plaintiffs' accounts was permissible under the Terms and therefore

17  Plaintiffs cannot satisfy this requirement.

18          **8.     Plaintiffs' promissory estoppel claim fails.**

19          Plaintiffs' promissory estoppel claim also fails for a number of reasons. First,

20  Plaintiffs allege an express contract, so promissory estoppel is inapplicable. *Distance*

21  *Learning Co. v. Silly Monkey Studios, LLC*, No. 16-cv-06943-SK, 2017 WL 9613958, at *1

22  (N.D. Cal. Feb. 14, 2017); *see also Johnson Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 615

23  (Ariz. Ct. App. 1998) (under Arizona law "promissory estoppel [is] a replacement for a

24  contract when parties are unable to reach a mutual agreement").[12]

25  _____

26  [12] Indeed, promissory estoppel actions are "the same as contract actions, but only
missing the consideration element." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th

27  172, 182 (2008) (internal citation omitted). Promissory estoppel "employs equitable
principles to satisfy the requirement that consideration must be given in exchange for the

28  promise sought to be enforced." *Kajima/Ray Wilson v. Los Angeles County Metro. Transp.*
*Auth.*, 23 Cal. 4th 305, 310 (2000).

1    Further, Plaintiffs cannot allege the elements of promissory estoppel—(1) a clear and

2    unambiguous promise; (2) reliance on that promise; (3) that the reliance was reasonable and

3    foreseeable; and (4) damages stemming from such reliance. *See Joffe v. City of Huntington*

4    *Park*, 201 Cal. App. 4th 492, 513 (2011); *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App.

5    4th 273, 284 (2005); *cf. Johnson Int'l, Inc.*, 967 P.2d at 615 (describing similar elements

6    under Arizona law).

7    To plead promissory estoppel, plaintiff must allege a promise that is "clear and

8    unambiguous in its terms." *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890

9    (1976); *see also Hisun Motors Corp., U.S.A. v. Auto. Testing & Dev. Servs., Inc.*, No. CV11-

10   1918-PHX-DGC, 2012 WL 682398, at *5 (D. Ariz. Mar. 2, 2012) (noting that California

11   and Arizona follow the same Restatement definition and citing California case law

12   describing the "clear and ambiguous" terms requirement). "To be enforceable, a promise

13   must be definite enough that a court can determine the scope of the duty and the limits of

14   performance must be sufficiently defined to provide a rational basis for the assessment of

15   damages." *Ladas v. Cal. State Auto. Assn.*, 19 Cal. App. 4th 761, 770 (1993); *In re Estate*

16   *of Shiya*, No. 1 CA-CV 11-0492, 2012 WL 4569266, at *6 (Ariz. Ct. App. Oct. 2, 2012)

17   ("[P]romissory estoppel requires a promise that is sufficiently definite in nature."). Here,

18   Plaintiffs have not alleged any concrete promises, and their claim contradicts the plain

19   language of Twitter's Terms, which enshrine Twitter's discretion to terminate accounts.

20   Smith Decl., Ex. C. § 8; *id.*, Ex. D § 4.[13]

21   **B.    Plaintiff Brittain for Senate Cannot Appear *Pro Se*.**

22   Separately, Plaintiff Brittain for Senate should be dismissed from this action because

23   an organization cannot appear *pro se*. See *Rowland v. Cal. Men's Colony*, 506 U.S. 194,

24   201-02 (1993) (recognizing the well-established rule that "all artificial entities" may

---

26   [13] And even if Plaintiffs had interpreted certain statements to be a promise that
27   Twitter would not suspend their accounts, reliance on those statements would not be
     reasonable in light of the Terms, and Plaintiffs' reliance would not be foreseeable. *Joffe*,
28   201 Cal. App. 4th at 513 (whether reliance is reasonable may be decided as a question of
     law if reasonable minds could come to only one conclusion on the basis of the facts alleged).

1   "appear in the federal courts only through licensed counsel"); *Romien v. Stanton*, No. CV-

2   16-00604-PHX-JJT, 2017 WL 131571, at *3 (D. Ariz. Jan. 13, 2017) ("[A]n entity other

3   than a sole proprietorship, cannot appear in this Court *pro se* and may appear and be heard

4   only through licensed counsel."); *Brite Smart Corp. v. Google, Inc.*, No. 5:15-cv-03962-

5   BLF, 2016 WL 1070667, at *2 (N.D. Cal. Mar. 18, 2016) ("Unlicensed laypersons,

6   including the owners of companies, officers of a corporation, partners of a partnership, and

7   members of an association may not represent their respective entities.").[14]

8   ### C.   Plaintiff's Claims Are Barred by the Communications Decency Act.

9   Even if Plaintiffs could sufficiently plead their claims (and they cannot), the CDA

10  immunizes Twitter from liability for removing content or terminating their access to its

11  services. Any claim based on this conduct fails and cannot be cured by amendment.

12  Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive

13  computer service shall be treated as the publisher or speaker of any information provided

14  by another information content provider." 47 U.S.C. § 230(c)(1). This "immunizes

15  providers of interactive computer services against liability arising from content created by

16  third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521

17  F.3d 1157, 1162 (9th Cir. 2008) (en banc). Courts apply this immunity broadly "to protect

18  websites not merely from ultimate liability, but from having to fight costly and protracted

19  legal battles." *Id.* at 1175.

20  A defendant is entitled to this immunity if (1) it provides an "interactive computer

21  service," (2) plaintiff's claim treats the defendant as the "publisher" or "speaker" of the

22  offending content, and (3) the content was "provided by another information content

23  provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009), *as amended*

24  (Sept. 28, 2009). Twitter meets all these requirements.

25

26  ———————————
    [14] To the extent Plaintiffs seek to assert claims on behalf of a putative class, any class allegations likewise should be stricken. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664

27  (9th Cir. 2008) (a plaintiff proceeding *pro se* may not pursue claims on behalf of others); *Sciortino v. PepsiCo, Inc.*, No. 14-cv-00478-EMC, 2015 WL 13426192, at *1 (N.D. Cal.

28  Nov. 30, 2015) (a *pro se* litigant cannot be a putative class representative).

### 1.    Twitter Provides an Interactive Computer Service

First, Twitter provides an interactive computer service, which is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). [15] As other courts have repeatedly held, Twitter fits this definition easily because it is an Internet-based service that hosts content and allows communications by multiple users, including Plaintiffs. *See Mezey v. Twitter*, No. 1:18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (holding that Twitter is an interactive computer service); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016) (same); *Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 104 (D.D.C. 2016) (same).

### 2.    Plaintiff's claims treat Twitter as a publisher

Second, Plaintiffs' claims treat Twitter as a publisher because they seek to hold Twitter liable for its exercise of its "traditional editorial functions—[i.e., for] deciding whether to publish, withdraw, postpone or alter content." *Roommates.com*, 521 F.3d 1157, 1184; *see also id.* ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (Section 230 bars claims seeking to impose liability for conduct "relating to the monitoring, screening, and deletion of content from [a covered service's] network—actions quintessentially related to a publisher's role").

In *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, for example, the plaintiff created a Facebook page promoting human rights for Sikhs in India. 144 F. Supp. 3d 1088, 1090 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. Sept. 13, 2017). Plaintiff sued Facebook for blocking access to the page in India, alleging that Facebook discriminated against it on

---

[15] An "access software provider" is "a provider of software (including client or server software), or enabling tools that do any one or more of the following: [] filter, screen, allow, or disallow content; [] pick, choose, analyze, or digest content; or [] transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." *Id.* § 230(f)(3), (4).

the basis of race, religion, ancestry, and national origin. *Id.* The court held that the blocking of the page was editorial discretion immunized by the CDA, and plaintiff's claim treated Facebook as the page's publisher. *Id.* at 1095 (internal citation omitted).

Likewise, in *Mezey v. Twitter, Inc.*, the plaintiff brought claims against Twitter arising from the termination of his Twitter account, alleging in part that Twitter maintained one-sided policies and terms that favored liberals over conservatives. No. 1:18-cv-21069-KMM, Dkt. Nos 1, 13 (S.D. Fla. July 19, 2018). Twitter moved to dismiss the complaint without leave to amend on the grounds that, among other things, the CDA barred the plaintiff's claims. *See Mezey*, 2018 WL 5306769, at *1. The court granted Twitter's motion and dismissed the complaint with prejudice, holding that the plaintiff could not state any claim against Twitter, as his claims targeted Twitter's exercise of editorial discretion and were therefore barred under the CDA. *Id.* at *1-2.

Here, as in *Sikhs for Justice* and *Mezey*, Plaintiffs' claims ultimately arise from Twitter's alleged decision to suspend their accounts, and they are barred. Plaintiffs' lawsuit similarly targets Twitter's decision to terminate their accounts (i.e., remove content) and therefore targets Twitter's publisher conduct. *See generally* FAC.[16]

### 3.   Another information content provider posted the content.

Finally, the accounts subject to this litigation contained content created, developed, and provided by Plaintiffs. *See* FAC ¶¶ 15, 29. Thus, Plaintiffs—not Twitter—are the "information content provider[s]" for the content at issue in this action. *See, e.g.*, *Mezey*, 2018 WL 5306769, at *1 ("Plaintiff is the information content provider as he created the relevant content associated with his Twitter account"); *Sikhs for Justice*, 144 F. Supp. 3d at 1094 (finding that the creator of a Facebook page that Facebook allegedly blocked unlawfully was the "information content provider" for purposes of CDA immunity).

---

[16] CDA immunity applies so long as the three requirements are met and the cause of action is not one of the types exempted from the CDA. *See* 47 U.S.C. § 230(e)(1)-(5). The material question "is not the name of the cause of action" but rather "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker" if the answer is yes, then "section 230(c)(1) precludes liability." *Barnes*, 570 F.3d at 1101-02 (internal quotation marks omitted).

### D.     The First Amendment Bars Plaintiff's Claims.

The First Amendment provides Twitter a constitutionally-protected right to decide which speech to allow on its platform. *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (collecting cases and holding that Facebook has a "First Amendment right to decide what to publish and what not to publish on its platform"); *Jian Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) (dismissing case where relief sought would violate search engine's First Amendment rights). The same protection extends to other hosts of content, such as cable TV operators and newspapers. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 636 (1994) (cable programmers and operators engage in and transmit speech, including "by exercising editorial discretion over which stations or programs to include in its repertoire" (citation and internal quotation marks omitted)); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (newspaper not required to publish op-ed columns with which it disagrees). Twitter therefore cannot face liability for its decisions about what speech to allow (or not) on its service and platform, and cannot be liable for suspending Plaintiffs' accounts.

### E.     Plaintiffs Should Be Denied Leave to Amend.

This Court has already allowed Plaintiffs one opportunity to amend their complaint. *See* Dkt. 12. Plaintiffs should be denied a second opportunity to amend because they failed, again, to comply with Rule 8 and cannot allege any actionable conduct against Twitter. Permitting a second amendment would be an exercise in futility. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). Here, Plaintiffs' claims all arise from Twitter's decision to terminate their accounts, and Twitter cannot be liable for this exercise of its editorial discretion. *See, e.g.*, *Dehen v. Does 1-100*, No. 17cv198-LAB (WCG), 2018 WL 4502336, at *4 (S.D. Cal. Sept. 19, 2018) (dismissing *pro se* plaintiff's complaint against Twitter without leave to amend because the claims targeted content posted by third parties); *Frenken v. Hunter*, No. 17-cv-02667-HSG, 2018 WL 1964893, at *4 (N.D. Cal. Apr. 26,

2018) (same); *Mezey*, 2018 WL 5306769, at *2 (same). This defect is not curable through amendment.

**IV.     CONCLUSION**

     For the foregoing reasons, Twitter respectfully requests that the Court dismiss Plaintiffs' claims with prejudice and deny Plaintiffs leave to amend.


Dated:  December 10, 2018                    **PERKINS COIE LLP**


                                   By: */s/ Jean-Jacques Cabou*
                                         Jean-Jacques Cabou
                                         2901 North Central Avenue, Suite 2000
                                         Phoenix, Arizona 85012-2788

                                   *Attorneys for Defendant Twitter, Inc.*

1

**CERTIFICATE OF CONFERRAL**

2       I hereby certify, pursuant to LRCiv 12.1(c) that prior to the filing of the foregoing

3   Motion to Dismiss Plaintiffs' Amended Complaint and Memorandum of Points and

4   Authorities in Support, I notified Plaintiffs Craig R. Brittain and Brittain for Senate of the

5   issues asserted in this motion and the parties were unable to agree that the Amended

6   Complaint was curable by a permissible amendment.

7

8

9                                                          */s/ Jean-Jacques Cabou*

10                                                     Jean-Jacques Cabou

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF System.

s/      Indy Fitzgerald

142286480.6