Craig R. Brittain
8625 E. Sharon Dr.
Scottsdale, AZ, 85260
(602) 502-5612
craig@brittainforsenate.com
craigrbrittain@gmail.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CRAIG R. BRITTAIN, AN INDIVIDUAL AND U.S. SENATE CANDIDATE IN ARIZONA; AND BRITTAIN FOR U.S. SENATE, A CAMPAIGN COMMITTEE,**<br><br>Plaintiffs,<br><br>vs.<br><br>**TWITTER, INC., A CALIFORNIA CORPORATION,**<br><br>Defendant. | CASE NO. 19-cv-00114-YGR<br><br>REPLY TO DEFENDANT'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM |

**I. Introduction: Defendant's Motion to Dismiss is a flawed premature attempt to hide critical information from this Court and from society.**

Defendant filed a Motion to Dismiss under no valid grounds and without evidence in order to avoid and delay the Discovery process, while simultaneously admitting that they could not survive a Discovery challenge because they are aware of their own contractual violations. All of Plaintiff's claims will eventually bear out as true and on the Right Side of History.

First, all of Plaintiff's Claims are pled sufficiently, follow Jury Instructions/models for relief, and state their claims for relief clearly based on previous precedent(s). The previous District Court of Arizona, in knowing that Discovery would be a requirement for the Plaintiff to prove his claims, scheduled Mandatory Initial Discovery which the Plaintiff complied with and the Defendant delayed. This Court should, at the bare minimum, uphold a Discovery schedule prior to taking the extreme, premature and unwarranted step of dismissal, and recognize the Right of the Plaintiff to a Jury Trial in a matter where the public interest clearly lies in his favor. Nor has the Defendant challenged that the public interest lies with the Plaintiff, and the Defendant has also not challenged Plaintiff's claim that their goal is to avoid Discovery by any means necessary. Second, the CDA of 1996 (47 U.S.C. § 230) does NOT apply to a Public Forum space where the State has jurisdiction. Third, The Defendant has not materially proven that they have jurisdiction, nor have they adequately challenged the jurisdiction of the State, nor have they challenged that the spaces in question (the tweet spaces of taxpayer funded public agencies and officials) are indeed Public Forums with State jurisdiction. This jurisdiction was recognized properly by the SDNY in Knight First Amendment Institute v. Trump ("*KFAI*", *infra.*) Fourth, Plaintiff created the content ("Content"), namely the accounts, the tweets, and everything associated with his owned and created account, to which Twitter asserts no legitimate ownership or control of. Twitter does not "host" the Content, which is and was created by Plaintiff without assistance from the Defendant. All Content is which does not violate the Law is considered equal under, and protected by, the First Amendment. Fifth, Plaintiff agreed to a previous version of the Terms of Service ("Contract") which was amended without his permission, participation or knowledge. This amendment, a textbook Breach of Contract, preceded the Conversion of Content by the Defendant.

1 Sixth, Twitter's Breach of Contract happened prior to the suspension of the
2 Content. The suspension of the Content is the grounds for the Conversion
3 claim, rather than the Breach of Contract claim. Defendant's assertion that the
4 Breach of Contract claim is based purely on the suspension of Plaintiff's
5 accounts is plainly wrong, as Plaintiff was harmed by the Breach of Contract
6 prior to the prima facie Content deletion. The deletion was merely an act of the
7 Conversion of Content valued by Defendant at $2.50-$5 per follower.
8 Defendant similarly creates Content (followers and advertisements) on behalf
9 of users via its marketing service at its own cost valuation of $2.50 - $5 per
10 created follower, and also offers a bulk Content creation service at the cost of
11 $100 per month. Seventh, Twitter need not itself be a public entity to have
12 Public Forums hosted on its platform. In this case, it is the Content which is a
13 Public Forum, as the user rightly controls their own Content according to the
14 Contract. If the user is a public official or agency, then likewise the Content of
15 all users within that space has been ruled to be First Amendment Protected.
16 Any interference with user Content which Twitter has no rightful jurisdiction
17 over is a Breach of Contract, which includes the stealth filtering of the Content
18 of elected officials and public agencies, as the Contract does not disclose that
19 flawed stealth tools ("Stealth Tools") are often used which act against and
20 violate the stated terms of the Contract. These Stealth Tools include
21 shadowbans, downranking, algorithmic filtering and other flawed, error-prone
22 or otherwise Contractually barred processes or services, which the Defendant
23 has given misleading and contradictory statements about over the course of the
24 previous 3 years. These Stealth Tools were utilized against the Plaintiff and
25 others prior to any alleged violation of the Contract claimed by the Defendant.
26 Accordingly, this claim has been echoed by many notable people and public
27 officials including US Senator Ted Cruz, US Representative Devin Nunes, and
28 President Donald J. Trump, who are also victims of these Stealth Tools.

Whereas Defendant's defense of the suspension of the Content is ambiguous, Plaintiff's Claim is clear – and during Discovery, Plaintiff's intent is to subpoena Senator Cruz, Representative Nunes, President Trump and many others to testify on his behalf, under oath. Plaintiff is but one of many affected users. A preemptive, fundamental Breach of Contract against any claimed user of Twitter is a preemptive, fundamental Breach against all users, which is why the Plaintiff includes the phrase "all similarly affected users" in the parties column. Courts have held universally that the party which commits the first fundamental Breach is liable. Plaintiff never breached the Contract at any time. Therefore, liability lies squarely on the shoulders of the Defendant. The weight of the provided evidence by Plaintiff, the public testimony under oath of similarly affected victims of Twitter's egregious practices, coupled with the requested Discovery from the Defendant will present a clear and compelling case for the Plaintiff. This Court need only schedule Discovery and set a date for the Jury Trial, thus setting a precedent for the Rule of Law and the Right Side of History, as well as upholding the findings of *KFAI*, that the social media spaces of elected officials and government are Public Forums protected by the First Amendment from which access cannot be restricted without cause.

**II. Background**

Far from "purported", Craig R. Brittain was and is FEC-registered US Senate Candidate S8AZ00189 and Brittain for US Senate is FEC-registered Committee C00656298, for the US Senate elections in 2018 and 2020. Twitter knew this because this information was on his Content prior to the suspensions. Defendant's counsel now disingenuously claims to not have known about the Content in question. It cannot be both ways, which makes it clear that Defendant's Counsel is unaware if the Content was in violation or not, as Defendant's Counsel has tacitly admitted they haven't seen it.

Defendant attempts to present the Contract as applying to all users. If this is the case, then the Plaintiff and other parties governed by the Contract cannot be separated as a matter of convenience. Thus, all alleged Contract violations by Defendant against any user substantiate Plaintiff's claims against the Defendant, and alleged Contract violations by the Defendant against the Plaintiff similarly apply to all users. A clear standard must be reached and upheld, as there is one overweening, unbargained and deeply flawed unilateral Contract for all users within the United States. Plaintiff's claims, while principled, rely on established precedent – if a precedent would apply to one party, it applies to all parties. The Contract cannot be interpreted differently for different parties. *KFAI* applies equally to Plaintiff as it did to the Contract parties in that case. Specifically, both President Trump and the KFAI were within the Content space which Defendant now alleges is protected by CDA. However, the Ruling declared that space a "First Amendment Protected Public Forum", and under that token, Plaintiff has the right to access that space, declared by the SDNY Court to be under State jurisdiction and NOT CDA 230. The claim is thereby symmetrical. Defendant's claim of omission is silly, in light of Plaintiff's original Complaint being rejected by the Arizona District Court for providing too much information, "not short and plain." The Plaintiff cannot simultaneously be overdoing it and deliberately underdoing it. The Defendant can rest assured that the Plaintiff has not conspired, and has no intention, at any point, to omit anything. Rather, the allegation of cherry-picking – which Plaintiff, a pro se litigant and not a trained lawyer, would have to possess significant legal skill to achieve – is an admission by the Defendant that the Facts of the Matter simply overwhelmingly benefit and lean towards the Plaintiff. This admission directly contradicts the Motion for Dismissal. Defendant plainly admits that the original Complaint included "78 pages and more than 200 paragraphs of factual allegations and claims."

## III. Argument

### A. Plaintiff's Claims are viable and supported by evidence, precedent and public interest.

### 1. First Amendment Claim

Defendant's premise that Twitter "not a state actor" is misguided. First, Twitter has regularly engaged in, and regularly used its service to engage in state action at the request/command of the governments and leaders of many nations, including but not limited to the United States of America, Iran, Turkey, the United Kingdom, Pakistan, and Israel. These nations are also a key factor in the use and implementation of Contract-breaching Stealth Tools. Second, Twitter grew from a valuation of $220,000 in 2007 to approximately $9.25 Billion in 2011, and from 80,000 users to tens of millions, thanks to the joining and use of the platform by Illinois Senator/President Barack Obama during that time frame, which included his official appearance at a "Town Hall" event sponsored by the company in which he used his official title and position to lend and show support to Twitter, to its corporate officers and to the company itself. Third, the Court must look at Twitter as the SDNY saw it in *KFAI*, not based on Twitter's opinion of itself – the Court ruled that the interactive spaces of elected officials and agencies, were, indeed, "created by government designation of a place or channel of communication for use by the public at large for assembly and speech." Indeed, the SDNY Court ruled that President Trump is the provider of, and has jurisdiction over his own Twitter space, and by extension, that jurisdiction applies equally to all elected officials and agencies. Defendant has no proper jurisdiction. Fourth, Plaintiff's Content as Candidate and Committee was created and used under the same Public Forum doctrine as Public Forums for speech. Defendant then, AFTER fundamentally Breaching its Contract via the use of Stealth Tools, prevented access to Plaintiff's Public Forums and Content.

### 2. Federal Election Rules Claim

Defendant Twitter is affiliated with, shares investors, donors and shareholders with, and has a Board of Directors which has at least two members of, large scale licensed broadcast companies. Licensed broadcasting companies represent some of the largest users of Twitter, including CNN which has over 200 million combined followers across their primary accounts as well of the accounts of their employees, donors, shareholders and executives. Subsequently, *KFAI* applies here as well, as the Plaintiff, as a Candidate, must be allowed equally to access the licensed Twitter spaces of Broadcast Companies in the same way in which he must also be allowed to access the Public Forum spaces of his elected officials. 47 U.S. Code § 315 applies in form and function to CNN, Fox News, etc. in the same or a similar way that the First Amendment applies to the Public Forum space of President Trump, Senator Cruz, etc. - if any other Candidate could tweet within the space of CNN's Twitter account, Plaintiff must similarly be allowed to do so as well.

### 3. Breach of Contract Claim

Defendant has established the Contract. However, the allegation of Breach is not explicitly the suspension and/or termination of accounts. Contrary to Defendant's assertion here, Plaintiff does not assert that the initial Breach of Contract was the suspension of his Content, rather, the suspension of the Content is the grounds for the Conversion claim. The grounds for the Breach of Content claim include that Plaintiff had a reasonable expectation that Defendant would not use Stealth Tools to interfere with his Candidacy, his created Content/Public Forums, or participation in the Public Forums of existing elected officials. Twitter's stated claimed duty is to provide free speech to all. Twitter CEO Jack Dorsey ("Dorsey") has regularly claimed that social media access is a right and that his company is actually a public utility like water or electricity. Dorsey cannot be allowed to call his company Public

in public and Private in this Court. With this reply Plaintiff includes significant evidence that details the many times Dorsey has made the claim that Twitter is a public utility, a public square, and/or a Public Forum, including in Congressional testimony. This Court should honor Dorsey's statements as pertaining to Twitter's Contract, as pledges and promises made publicly by the CEO. Alternatively, they are also examples of Estoppel, *infra*. Defendant states that Plaintiff "cannot allege" an instance when Defendant undertook an obligation not to suspend accounts. However, Plaintiff can, has, and in fact this obligation by Defendant is stated in multiple Twitter policies, including their World Leaders policy which states in writing that "Twitter is here to serve and help advance the global, public conversation. Elected world leaders play a critical role in that conversation because of their outsized impact on our society. Blocking a world leader from Twitter or removing their controversial Tweets would hide important information people should be able to see and debate. It would also not silence that leader, but it would certainly hamper necessary discussion around their words and actions." This directly constitutes a policy promise not to suspend world leaders, and can be reflexively interpreted as a promise not to suspend users who engage with world leaders, and subsequently not to use Stealth Tools against world leaders or their followers. Therefore, Defendant's statement regarding obligation is flatly wrong and contradicts their own policy. Defendant subsequently wrongly asserts that Plaintiff is using unconscionability as grounds for the Breach of Contract claim. This is not the case. Rather, unconscionability is merely cited as a reference. While unconscionability of a contract is only enforceable as a defense, the procedural and contractual principles still apply as a matter of precedent, as Courts have widely held that the presence of a unilateral overweening modification clause absent of bargaining "amend-at-will-without-notice clause" is a Breach of Contract.

Finally, legal citation should not be confused with personal situation. Whereas behavioral violations were alleged by Defendant against Taylor leading to the activities taken against his accounts, no similar violations have been alleged against the Plaintiff in this case. In fact, the Defendant has never indicated or proven that the Plaintiff violated any rules, associated with any banned groups, or breached Twitter's Contract – because the Plaintiff did not. Additionally, Stealth Tools were regularly used against Plaintiff prior to the Content suspension. No reason was ever given for the Content suspension of Plaintiff's accounts. Thus, while at the time of filing in June 2018, Plaintiff's legal grounds were similar to Taylor's, the resulting proceedings differ dramatically from this case. Taylor did not adequately cite a First Amendment concern, and the Breach of Contract Claim in question is materially different from the Plaintiff's Claim in this case. *KFAI* and other elements which establish Public Forum jurisdiction are absent from Taylor's case. Now this Court must rule based on the newly established Public Forum precedent, not on a marginally similar complaint which does not include the primary grounds.

**4. Conversion Claim**

Accounts, followers, tweets, profiles, and all other elements of any Twitter account are created Content. The Contract states plainly that Content belongs to users. The use of Stealth Tools or other methods to obscure or remove access to Content is Conversion. Defendant's marketing/analytics section promises to create Content (followers) for any user at the cost of $2.50 to $5 USD per follower. Truly, Defendant's company does this for paying customers on a regular basis. Far from a "free platform", Twitter's primary source of revenue comes from advertisers and marketing customers who directly pay for the creation of Content. Twitter in turn creates the Content (followers and engagements) on the behalf of users. In the event that they are removed, Twitter has a refund policy and issues refunds.

In knowing that Twitter removed over 500,000 followers from Plaintiff, similarly, the act of Conversion lies in the refusal to grant a direct refund of the value of Plaintiff's followers according to Defendant's own valuations and market methods. Thus, at a bare minimum, Plaintiff is entitled to 500,000 x $2.50 - $5, or $1,250,000 - $2,500,000 USD from the Conversion Claim alone. Courts have long held that once a specific item, whether physical good or digital content, has a specific value, Conversion applies to that item. These monetary values and practices are established in Defendant's Contract and policy documents. The Conversion Claim does not contest whether or not Defendant can remove followers, rather, it establishes the cost which must be repaid to the Plaintiff via Contract obligation. Defendant's Motion acknowledges the followers are the property of the Plaintiff, and thus the Conversion Claim prevails by admission. Defendant also admits that Plaintiff is the rightful sole owner of his accounts.

**5. Antitrust Claim**

Plaintiff's antitrust claim is valid, but requires Discovery to substantiate. Numerous elected officials from both the Republican and Democratic Party have cited antitrust concerns, including Senators Elizabeth Warren and Ted Cruz. These witnesses will be brought in via subpoena to testify, and in turn their participation and testimony in Plaintiff's case will explicitly prove, along with the requested Discovery information, that the Defendant did, at the very least, conspire in the commission of antitrust practices, including using Stealth Tools to limit the reach of competing platforms which have accounts on their service, and to likewise use Stealth Tools against advocates of competing platforms. Furthermore, Plaintiff alleges that only 3 companies (controlling 2 paired brands each) control the market. Facebook owns Instagram and Facebook. Google owns YouTube and Google. Twitter owns Periscope and Twitter. This lead Senator Warren to call for the breakup of these companies.

Similarly, these claims are being simultaneously investigated by the US Department of Justice and multiple State Attorney Generals. This Court should not confuse the Plaintiff's limited personal ability to pursue an extremely difficult Claim with the merits of that Claim. Rather, the Court should anticipate that the Plaintiff will be vindicated at some point, and should, in the public interest, grant the full scope of Discovery before ruling on this Claim.

**6. Negligent Infliction of Emotional Distress Claim**

Plaintiff states plainly, and evidences that any of the other 7 Claims in the Complaint, to which he is a victim, have also been inflicted upon countless others. This Claim is not explicitly reliant upon the Breach of Contract Claim. Plaintiff thereby presents a large sum of evidence showing that similarly situated victims of Defendant's actions were also affected.

**7. Tortious Interference Claim**

Defendant, at the time of the Breach of Contract involving the use of Stealth Tools against Plaintiff, knew that Plaintiff was using his Content for business, including prominently displaying ads for his third party Patreon business account, which was regularly gaining new financial supporters/backers on a daily basis, and also Defendant knew, via the prominent display of his FEC information on his Campaign accounts, that Plaintiff was and is a Candidate for the US Senate in Arizona seeking donations for his campaign. Individual backers, political donors and general voters were effectively impeded from supporting Plaintiff. Plaintiff is a Republican. Defendant is a corporation that explicitly sponsors the Democratic Party, including donating millions via both Dorsey individually and Twitter as a corporation. Thus, it was, and is, in their interests to commit financial harms against Republicans. They did, they are, and they will continue to do so without the swift action of the Court.

**8. Promissory Estoppel Claim**

Dorsey continues to make statements which extend beyond the liability of Twitter's Contract. Thus, these additional statements by Dorsey, if they cannot be held as per the Contract, should be held as Promissory Estoppel – that is to say that Breach of Contract and Promissory Estoppel have occurred concurrently in separate instances, and the only dispute is where one stops and the other begins, as to when Dorsey makes a direct promise and obligation which conflicts with Twitter's Contract, thus indicating that the Contract does not actually apply. Defendant continues to host numerous violent extremist groups on their platform, including Radical Islamic Terror groups and affliates of terror groups recognized by the US House of Representatives and Senate, which include Jamaat-e-Islami, ISIS, Hezbollah, the Muslim Brotherhood, and Hamas. Similarly, they continue to host the Content of violent convicted criminals while they use Stealth Tools against their political and social adversaries. Dorsey has stated that he is aware that he has made the promise of free speech, and that Defendant "makes mistakes" - those mistakes are not accidents, they are the basis of the Promissory Estoppel Claim, and they've been thoroughly documented. Dorsey's statements are clear and unambiguous promises that Twitter will be a "free speech platform" and that social media is "a right."

**B. Brittain For US Senate is a pseudonym**

The material interest of Plaintiff and his campaign committee are the same. Whereas the campaign committee itself cannot "appear", Brittain for US Senate is simultaneously a known pseudonym for the primary Plaintiff. Thus, Defendant's argument against the appearance of Plaintiff's committee is moot, and an exception should be granted, as a Campaign Committee is not a for-profit business, but rather via the Candidate's platform, seeks to protect the rights of "animals and children", among other rights, and should be granted

an exception, either as listed or as a pseudonym for the primary Plaintiff Furthermore, this attack is conducted explicitly to vex the Plaintiff, as the presence or lack thereof of Plaintiff's Campaign Committee/pseudonym has no legal bearing on the outcome of the case.

**C. Plaintiff's Claims are not barred by the CDA.**

*KFAI* shows the existence of First Amendment Protected Public Forums on Defendant's service, and within public jurisdiction, CDA does not apply nor immunize the Defendant. Furthermore, CDA does not apply to Conversion, Antitrust, or Negligent Infliction Claims.

**1. Public officials, agencies and candidates provide Public Forums, not the Defendant.**

*KFAI* establishes that President Trump and others are the State providers of Public Forums, that the provision of these Public Forums is state action, and that people have the rights to access them. Public spaces have no CDA immunity.

**2. Nor does Twitter act as a publisher or service within these spaces.**

Twitter's only legitimate role in regards to these Public Forums is as a participant (user). Thus, no CDA immunity.

**3. Twitter's interference with access to these Public Forums is a tort.**

Just as you cannot physically block entry to City Hall, you cannot digitally block access to a Public Forum which you do not hold jurisdiction over. In doing so, you violate the First Amendment, which the Defendant did and continues to do via the preemptive use of Stealth Tools and the subsequent secondary use of tools designed to manage private forums, which are in turn used illegitimately against the purpose of "free speech rights" stated by Dorsey. Plaintiff, reasonably, expected that based on previous content neutral cases, that his Content would be quickly restored, as was done in the cases of other accidentally suspended users.  But the Content was not restored.

**D. The First Amendment supports Plaintiff's claims.**

The Defendant has neither First Amendment nor Private Jurisdiction under the CDA, but attempts to claim both, which is a clear contradiction and error. The Defendant cannot simultaneously have Constitutional jurisdiction and private jurisdiction under the CDA – this is an admission by the Counsel that the Defendant has no legitimate jurisdiction (public or private), which is, again, how the Court in *KFAI* ruled. The First Amendment jurisdiction is that of Public Officials (President Trump, Senator Warren, Representative Nunes, et al.), Public Agencies (FBI, CIA, DHS, et al.), and Candidates for Public Office (Plaintiff et al.) Thus, the tort committed is as plainly stated – denial of Plaintiff's ability to maintain and have jurisdiction over a Public Forum which he created, via the use of non-neutral Stealth Tools and other non-neutral methods both direct and indirect.

**E. Discovery evidence should already be available for Court and Plaintiff.**

Prior to a premature ruling, especially on a case track as complex as antitrust, this Court should wait for the production of the requested evidence and documentation by the Defendant, much of which overlaps with what was recently requested by a Senate Subcommittee involving Senators Cruz, Hawley and numerous others. The video of that subcommittee hearing is presented in full as evidence detailing conflicting statements made by the Defendant, and their unwillingness to consent to Discovery, as they deliberately obfuscate the truth. This Court should assent to the Right Side of History, as our elected officials have done.

**F. Evidence presented as part of this reply**

Plaintiff requests that the Court acknowledge the difficulty in properly formatting Electronically Stored Information and submits a large sum of videos, articles, tweets, and related information supporting his case and his Claims. This information will critically factor into the Court's decision.

**G. Legal Argument from Authorities**

Currently the merged Shenwick et al. v. Twitter (3:16-cv-05314) which also contains Plaintiffs from Porter ex rel v. Twitter (3:16-cv-06136) and In re: Twitter Inc. Shareholder Derivative Litigation (1:18-cv-00062) details Fraud and Antitrust violations. In the span of that case and its depositions, Twitter has consistently avoided Discovery, and is accused of using the same Stealth Tools mentioned by Plaintiff in this matter to suppress users to inflate its active user counts on a broad scale in that case, effectively monopolizing its position vs. competing social media websites. Both actions are anticompetitive and symmetrical. This fits broadly into the scope of United States v. American Tel. and Tel. Co., 552 F. Supp. 131 (D.D.C. 1983). Like AT&T in 1983, Twitter is currently subject to pending Securities action. Twitter's service was declared a leased series of Public Forums in KFAI (1:17-cv-05205) which cited Packingham v. North Carolina, 137 S. Ct. 1730 (2017), Reno v. American Civil Liberties Union, 521 U.S. 844 (1997), Am. Atheists v. Port. Auth. of NY and NJ, 760 F.3d 227, 237 n.11 (2d Cir. 2014), Cornelius v. NAACP Leg. Def. Fund, 473 U.S. 788 (1985)

Perry Educ. Ass'n v. Perry Educators' Ass'n, 460 U.S. 37 (1983)

Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v. Martinez, 561 U.S. 661 (2010), Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546 (1975), Halleck v. Manhattan Community Access Corp., 882 F.3d 300 (2018), Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 77 (1st Cir. 2004), and Pleasant Grove City v. Summum, 555 U.S. 460 (2009). Plaintiff additionally adds Marsh v. Alabama, 326 U.S. 501 (1946), Schneider v. State (Town of Irvington), 308 US 147 (1939), Lovell v. City of Griffin, 303 U.S. 444 (1938) with reference to Twitter's status as a "modern day company town" where over 100,000 combined public officials and agencies have First Amendment Public Forums. With regards to Twitter's unilateral contracts,

Plaintiff cites Horton v. Horton, 254, Va. 111/115 (1997), Rodman v. Safeway (11-cv-03003), Morrison v. Amway Corp., 49 F. Supp. 2d 529 (S.D. Tex. 1998), Harris v. Blockbuster, 622 F.Supp.2d 396 (2009), Douglas ex rel. v. Talk America (cv-06-03809), Nguyen v. Barnes & Noble, Inc., 763 F. 3d 1171. Defendant committed the first Breach of the Contract (Horton) via the use of Stealth Tools and subsequently modified its contract hundreds of times without notifying the Plaintiff prior to the eventual suspension of his Content. Plaintiff never violated the Contract via Content or off-platform activity. Nor was Plaintiff ever a party to bargaining or consideration, nor given the opportunity to opt out of the Contract, nor notified at all of the hundreds of changes made to the Contract between 2013 and 2018. Plaintiff refers to the Amended Complaint in regards to the citations of Dillon v. Legg, 68 Cal. 2D 728 (1968) for Negligent Infliction of Emotional Distress and Cohen v. Cowles Media Company (No. 90-634) (1991) 501 U.S. 663 in regards to Promissory Estoppel. Defendant has made numerous widespread public promises to uphold Public Forums and free speech on its platform via their staff to include promises by their CEO, Dorsey, which are documented thoroughly all the way up to the level of the United States Congress. Defendant has not kept those promises, leading to the Estoppel of an extremely large number of users who are also party to Defendant's broken Contract, in turn their Content having also been subject to Stealth Tools in a manner similar to the situation of the Plaintiff, many of them having never violated the Contract. Their testimony will corroborate Plaintiff's Complaint, thus proving that generally, Estoppel did occur and is applicable. The applicability of Estoppel will subsequently display that the widespread anticompetitive Contract and Antitrust violations, witnessed by the Plaintiff against his similarly situated peers, combined with his own loss of his Content which has high value, caused the Negligent Infliction of Emotional Distress to Plaintiff.

## G. Conclusion

Plaintiff includes a Table of Authorities along with Electronically Stored Information and links presented to this Court as evidence. Discovery is critical in order for the Court to rule properly in this case, as is the testimony of the countless prominent witnesses who also have been similarly victimized. The existing Discovery Requests are in Document 11, filed June 19, 2018. Plaintiff includes an attached Proposed Order setting prompt Discovery/Document Production/Case Management, This Court has not witnessed the full depth of this case, nor are the factors present for either a dismissal and/or a summary judgment. Nor does Defendant attempt to establish the factors necessary for a dismissal, instead placing misguided reliance upon imaginary perceived immunity where none exists. Nor does Defendant attempt to prove that this Court should rule with prejudice. Defendant fails to show under Fed R. Civ P. 56 that there is "no genuine dispute as to any material fact" and this Court must rule "in the light most favorable to the non-movant", the Plaintiff. In that light, with many facts still yet to be established and a long and complex track ahead, Plaintiff respectfully requests that this Court find that the Defendant's Motion to Dismiss is premature, incorrect and should be denied.

DATED: April 26, 2019  _____

Craig R. Brittain

8625 E. Sharon Dr.

Scottsdale, AZ, 85260

(602) 502-5612

craig@brittainforsenate.com

craigrbrittain@gmail.com