1   Julie E. Schwartz, Bar No. 260624
    JSchwartz@perkinscoie.com
2   PERKINS COIE LLP
    3150 Porter Drive
3   Palo Alto, CA  94304-1212
    Telephone:  650.838.4300
4   Facsimile:  650.838.4350

5   Attorneys for Defendant
    Twitter, Inc.
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  Craig R. Brittain, an individual and US Senate     Case No. 4:19-cv-00114-YGR
    candidate in Arizona in the 2018 Federal
13  Elections;                                         **TWITTER, INC.'S REPLY IN**
                                                       **SUPPORT OF MOTION TO DISMISS**
14  Brittain For US Senate, a Principal Campaign        **AMENDED COMPLAINT**
    Committee (And on behalf of all similarly
15  affected users of Twitter),                        [Fed. R. Civ. P. 12(b)(6)]

16              Plaintiffs,                             Date:      Not Applicable
                                                       Time:      Not Applicable
17         v.                                          Courtroom: Courtroom 1
                                                       Judge:     Hon. Yvonne Gonzalez Rogers
18  Twitter, Inc., a California corporation,

19              Defendant.

20

21

22

23

24

25

26

27

28

LEGAL144253034.5                                            Case No. 4:19-CV-00114-YGR
                                                     REPLY IN SUPP. MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ......................................................................................................... 2

    A.   Plaintiff's First Amendment Claim Fails and, In Fact, the First
        Amendment Supports Dismissal. ................................................................... 2

        1.   Plaintiff's First Amendment Claim Fails Because Twitter Is
              a Private Company. ............................................................................. 2

        2.   The First Amendment Bars Plaintiff's Claims. ................................. 4

    B.   The Communications Decency Act Also Bars Plaintiff's Claims. ................. 5

    C.   Plaintiff's Opposition Underscores the Fatal Deficiencies in His
        Remaining Claims. ........................................................................................ 7

        1.   Plaintiff's Federal Election Rules Claim Fails Because
              Twitter Is Not a Licensee and No Private Right of Action
              Exists for the Alleged Violation. ....................................................... 7

        2.   Plaintiff's Breach of Contract Claim Fails Because Twitter's
              Terms Expressly Reserve Its Discretion to Suspend
              Accounts. ............................................................................................ 7

        3.   Plaintiff's Conversion Claim Fails to Allege
              Any Wrongful Act. ............................................................................. 8

        4.   Plaintiff's Antitrust Allegations Are Not Sufficient to State
              a Claim. .............................................................................................. 9

        5.   Plaintiff Fails to State a Claim for Negligent Infliction of
              Emotional Distress. .......................................................................... 10

        6.   Plaintiff's Intentional Interference with Contractual
              Relations Claim Fails. ...................................................................... 10

        7.   Plaintiff's Promissory Estoppel Claim Fails Because None
              of the Alleged Promises Was Clear and Ambiguous and It
              Would Have Been Unreasonable to Rely on Any Putative
              Promises Not to Suspend Accounts. ................................................. 11

    D.   Brittain for Senate Should Be Dismissed as a Plaintiff. ............................. 12

    E.   Plaintiff's Evidence is Improper and Objectionable. .................................. 12

        1.   General Objections ........................................................................... 12

              a.   Specific Objections to Each Category of Evidence ............... 14

                  (i)   Online Articles ........................................................... 14

                  (ii)   Account Content, YouTube Videos, and Podcast ............. 14

                  (iii)   Government Records and Court Record .......................... 15

    F.   Plaintiff Should Be Denied Leave to Amend. ............................................. 15

III.    CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Appling v. Wachovia Mortg., FSB*,
    745 F. Supp. 2d 961 (N.D. Cal. 2010) ....................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................10, 11

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009)........................................................................................6

*Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*,
    531 U.S. 288 (2001).......................................................................................................3

*Burgess v. Superior Court*,
    2 Cal. 4th 1064 (1992) ................................................................................................10

*Caraccioli v. Facebook, Inc.*,
    No. 16-15610, 700 F. App'x 588 (9th Cir. June 6, 2017)..............................................6

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*,
    770 F. Supp. 2d 1074 (S.D. Cal. 2010) .........................................................................9

*Dehen v. Does 1-100*,
    No. 17cv198-LAB (WCG), 2018 WL 4502336 (S.D. Cal. Sept. 19, 2018) ...............15

*DeLima v. YouTube, LLC*,
    No. 17-cv-733-PB, 2018 WL 4473551 (D.N.H. Aug. 30, 2018), *report and
    recommendation adopted*, 2018 WL 4471721 (D.N.H. Sept. 18, 2018), *aff'd*,
    Nos. 18-1666, 18-1728, 18-1804, 18-1831, 18-1947, 18-2023, 2019 WL
    1620756 (1st Cir. Apr. 3, 2019) ....................................................................................5

*Franklin v. X Gear 101, LLC*,
    No. 17 Civ. 6452 (GBD) (GWG), 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018)...................6

*Freedom Watch, Inc. v. Google, Inc.*,
    ___ F. Supp. 3d ___, 2019 WL 1201549 (D.D.C. Mar. 14, 2019), *appeal filed*,
    19-7030 (D.C. Cir. filed Apr. 17, 2019) .............................................................3, 4, 9

*Frenken v. Hunter*,
    No. 17-cv-02667-HSG, 2018 WL 1964893 (N.D. Cal. Apr. 26, 2018)......................15

*Gonzalez v. Google, Inc.*,
    335 F. Supp. 3d 1156 (N.D. Cal. 2018), *appeal filed*, No. 18-16700 (9th Cir.
    filed Sept. 10, 2018)....................................................................................................14

*Green v. YouTube, LLC*,
    No. 18-cv-203-PB, 2019 WL 1428890 (D.N.H. Mar. 13, 2019), *report and
    recommendation adopted*, 2019 WL 1428311 (D.N.H. Mar. 29, 2019).......................5

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................14

4

*Howard v. Am. Online, Inc.*,
208 F.3d 741 (9th Cir. 2000)....................................................................................4

5

6

*Joffe v. City of Huntington park*,
201 Cal. App. 4th 492 ............................................................................................12

7

*Keates v. Koile*,
883 F.3d 1228 (9th Cir. 2018).................................................................................3

8

9

*Kimbrell v. Twitter Inc.*,
No. 18-CV-04144-PJH, 2018 WL 6025609 (N.D. Cal. Nov. 16, 2018)..................12

10

*Kinderstart.com LLC v. Google, Inc.*,
2007 WL 831806 (N.D. Cal. Mar. 16, 2007)............................................................4

11

12

*Knight First Amendment Institute at Columbia University v. Trump*,
302 F. Supp. 3d 541 (S.D.N.Y. 2018), *appeal filed*, No. 18-1691 (2d Cir. filed
June 5, 2018)........................................................................................................2, 4

13

14

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .........................................................................................11

15

*La'Tiejira v. Facebook, Inc.*,
272 F. Supp. 3d 981 (S.D. Tex. 2017) ......................................................................4

16

17

*Ladas v. Cal. State Auto Ass'n*,
19 Cal. App. 4th 761 (1993) ...................................................................................12

18

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
60 Cal. App. 3d 885 (1976)....................................................................................12

19

20

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)...................................................................................13

21

22

*McCarthy v. Nat'l Broad. Co.*,
162 F.3d 1148 (2d Cir. 1998)....................................................................................7

23

*Med. Benefits Adm'rs of MD, Inc. v. Sierra R. Co.*,
No. CIVS062408FCDDAD, 2007 WL 2914824 (E.D. Cal. Oct. 5, 2007)................3

24

25

*Mezey v. Twitter, Inc.*,
No. 1:18-CV-21069-KMM, 2018 WL 5306769 (S.D. Fla. July 19, 2018) ........6, 15

26

*Mujica v. AirScan Inc.*,
771 F.3d 580 (9th Cir. 2014)....................................................................................2

27

*Nyabwa v. FaceBook*,
No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) ......................3

28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Pac. Express, Inc. v. United Airlines, Inc.*,
    959 F.2d 814 (9th Cir. 1992)............................................................................9

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...........................................................14

5

6

7

*Person v. Google, Inc.*,
    346 F. App'x 230 (9th Cir. 2009) ...................................................................10

*Prager University v. Google LLC*,
    No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018), *appeal filed*, No. 18-15712 (9th Cir. filed Apr. 24, 2018)...................................................3, 4

8

9

10

*Prosterman v. Am. Airlines, Inc.*,
    No. 16-cv-02017-MMC, 2016 WL 7157667 (N.D. Cal. Dec. 8, 2016)...................10

11

12

13

*Rollins v. Dignity Health*,
    338 F. Supp. 3d 1025 (N.D. Cal. 2018) .......................................................13, 14

*Shulman v. Facebook.com*,
    2017 WL 5129885 (D.N.J. Nov. 6, 2017)........................................................4

14

15

16

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...........................................................6

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011)....................................................................2, 10

17

18

19

*The Pen v. DC Radio Assets*,
    LLC, 181 F. Supp. 3d 49 (D.D.C. 2014).........................................................7

*Thing v. La Chusa*,
    48 Cal. 3d 644 (1989) ....................................................................................10

20

21

22

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
    146 F. Supp. 3d 1122 (N.D. Cal. 2015) ...........................................................9

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    No. 18-CV-04523-LHK, 2019 WL 1332762 (N.D. Cal. Mar. 25, 2019), *appeal filed*, No. 19-1813 (Fed. Cir. filed Apr. 26, 2019) .....................................................14

23

24

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010)..........................................................................13

25

26

*Zhang v. Baidu.com, Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014)................................................................4

**STATUTES**

27

28

15 U.S.C. § 2 ........................................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

47 U.S.C. § 153(30) .................................................................................................................7

47 U.S.C. § 230(a)(3) ..............................................................................................................5

47 U.S.C. § 230(a)(5) ..............................................................................................................5

47 U.S.C. § 230(c)(1) ...............................................................................................1, 2, 5, 6

47 U.S.C. § 230(e) ...................................................................................................................6

47 U.S.C. § 230(f)(2) ...............................................................................................................5

47 U.S.C. § 315 ........................................................................................................................7

U.S. Code Title 47 chapter 5 ...................................................................................................7

**OTHER AUTHORITIES**

Civil L.R. 3-9(b) .................................................................................................................1, 12

Fed. R. Civ. P. 8 ................................................................................................................2, 10

Fed. R. Evid. 201 ..................................................................................................................14

Fed. R. Evid. 201(b) .............................................................................................................13

Fed. R. Evid. 401 ............................................................................................................14, 15

Fed. R. Evid. 701 ..................................................................................................................15

Fed. R. Evid. 801 ..................................................................................................................15

# I.   INTRODUCTION

Plaintiff Craig R. Brittain's[1] Opposition ("Opp.") to Twitter's Motion to Dismiss Amended Complaint ("Mot."), puts the cart before the horse by requesting discovery and citing "evidence" without addressing the numerous fatal deficiencies in each of his claims. Only plaintiffs whose allegations are legally sufficient may permissibly pursue discovery. Plaintiff's Amended Complaint falls well short of this standard.

Plaintiff's theory springs from a presumption that Twitter acted unlawfully when it suspended or terminated his accounts, or took other alleged steps to restrict access to content he posted on his accounts. Twitter has the right to do that, contractually, statutorily, and constitutionally, and each of those rights independently compels dismissal. Twitter's Terms (the agreement that Plaintiff relies on) expressly grant it discretion to control the content on its platform, including suspending or terminating accounts. *See generally* Decl. of Courtney Smith in Supp. of Def. Twitter, Inc.'s Mot. to Transfer Venue, Dkt. 23 ("Smith Decl.") ¶¶ 2-4, 7-8; *id.*, Ex. C § 8 ("We reserve the right at all times (but will not have an obligation) to remove or refuse to distribute any Content on the Services [and] to suspend or terminate users . . . without liability to you."); *id.* § 10 ("We may suspend or terminate your accounts or cease providing you with all or part of the Services at any time or for any reason . . . ."); *id.*, Ex. D § 4 ("We may also remove or refuse to distribute any Content on the Services, suspend or terminate users, and reclaim usernames without liability to you."); *id.* ("We may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason . . . .").

Twitter's alleged actions are also protected by the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA"), which immunizes Twitter for its decisions regarding what content to host. Twitter's own First Amendment rights also protect its decisions about what content, and accounts, it hosts. Accordingly, Twitter's suspension or termination of Plaintiff's accounts, or other alleged steps Twitter took to restrict access to content he posted on those accounts, was not wrongful. For these reasons and those below, Plaintiff's Amended Complaint should be dismissed with prejudice.

---

[1] Although technically there are two plaintiffs, Twitter refers to the plaintiff in the singular based on his representation that the second plaintiff, Brittain for US Senate, a Campaign Committee, is an alias for the primary plaintiff, Craig R. Brittain, an individual. *See* Opp. at 12-13; *infra* at II.D.

## II.     ARGUMENT

Plaintiff's Opposition accuses Twitter of attempting to avoid and delay discovery and refers to testimony he intends to elicit or discovery he believes will support his claims. This is premature. "The Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it." *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014). An action survives dismissal and reaches discovery only if the plaintiff makes "factual allegations that[, when] taken as true, . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Plaintiff's claims—even read broadly to include allegations made for the first time in his Opposition—fail to meet this standard, and his claims are barred by the First Amendment and the CDA. This action should be dismissed with prejudice.

### A.     Plaintiff's First Amendment Claim Fails and, In Fact, the First Amendment Supports Dismissal.

#### 1.     Plaintiff's First Amendment Claim Fails Because Twitter Is a Private Company.

Plaintiff's First Amendment claim (as well as his arguments in general) relies heavily on *Knight First Amendment Institute at Columbia University v. Trump*, in which the U.S. District Court for the Southern District of New York held that "portions of the @realDonaldTrump account—the 'interactive space' where Twitter users may directly engage with the content of the President's tweets—are . . . a designated public forum." 302 F. Supp. 3d 541, 549 (S.D.N.Y. 2018), *appeal filed*, No. 18-1691 (2d Cir. filed June 5, 2018). But as that case recognized, Twitter is a private company, and its holding applies to President Trump alone, not Twitter generally.[2]

But even assuming that the *Knight* court was correct that portions of the President's Twitter account qualified as a designated public forum, Plaintiff's First Amendment claim still fails because Twitter is a private company, not a state actor—an inquiry that is separate from the public forum analysis. *See, e.g.*, *Freedom Watch, Inc. v. Google, Inc.*, ___ F. Supp. 3d ___, 2019 WL 1201549, at *6 (D.D.C. Mar. 14, 2019) (dismissing First Amendment claim because Twitter and other online

---

[2] As explained in its Motion, Twitter disagrees with any portion of the *Knight* opinion that indicates Twitter is a public forum. Twitter is private and facilitates speech by account holders on its platform subject to its Terms and rules. *See* Mot. at 5-6.

1   platforms "are private businesses that do not become 'state actors' based solely on the provision of
2   their social media networks to the public," rejecting plaintiffs' argument that "regulating free
3   speech within their public forums" transforms online platform companies into "quasi-state actors"),
4   *appeal filed*, 19-7030 (D.C. Cir. filed Apr. 17, 2019); *Prager University v. Google LLC*, No. 17-
5   CV-06064-LHK, 2018 WL 1471939, at *6-8 (N.D. Cal. Mar. 26, 2018) (rejecting argument that
6   YouTube and Google were state actors for First Amendment purposes because they "hold YouTube
7   out 'as a public forum dedicated to freedom of expression to all' and . . . 'a private property owner
8   who operates its property as a public forum for speech is subject to judicial scrutiny under the First
9   Amendment"), *appeal filed*, No. 18-15712 (9th Cir. filed Apr. 24, 2018); *Nyabwa v. FaceBook*,
10  No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) (acknowledging the recognition
11  "that social media sites like FaceBook [sic] and Twitter have become the equivalent of a public
12  forum for sharing ideas and commentary," but dismissing plaintiff's First Amendment claim
13  against Facebook because the Court had "not declare[d] a cause of action against a private entity
14  such as FaceBook [sic] for a violation of the free speech rights protected by the First Amendment.").

15       Determining whether Twitter, a private actor, engaged in state action requires considering
16  "(1) whether the private actor was acting pursuant to the state's coercive power, (2) whether the
17  private actor was undertaking a public function, and (3) whether the private actor received
18  significant encouragement from the state or whether its functions were entwined with governmental
19  policies." *Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 291 (2001).
20  Plaintiff has not plausibly alleged any of these factors. His contention that Twitter "regularly
21  engaged in, and regularly used its service to engage in state action at the request/command of the
22  governments and leaders of many nations," Opp. at 6, is conclusory and unsupported by any facts.
23  *See Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (dismissal was appropriate where "the
24  conclusory allegations in the complaint are speculative and do not state a plausible claim for
25  relief"). It should also be disregarded because it does not appear in his complaint. *See Med. Benefits
26  Adm'rs of MD, Inc. v. Sierra R. Co.*, No. CIVS062408FCDDAD, 2007 WL 2914824, at *4 (E.D.
27  Cal. Oct. 5, 2007) ("[F]acts not alleged in the complaint cannot be considered, and accordingly, the
28  court properly disregards plaintiffs' arguments based on these new facts."). Plaintiff's argument

1    that Twitter benefited from President Obama's use of its services likewise does not permit any

2    plausible inference that Twitter acted "pursuant to the state's coercive power," that it undertook 'a

3    public function," or that Twitter "received significant encouragement from the state" or "its

4    functions were entwined with governmental policies."

5         Indeed, even in *Knight*, the court acknowledged that "Twitter is a private (though publicly

6    traded) company that is not government-owned" and that "Twitter . . . maintains control over the

7    @realDonaldTrump account (and all other Twitter accounts)." 302 F. Supp. 3d at 566-67. The First

8    Amendment was implicated in *Knight* only because of conduct by *government officials* in

9    exercising control over President Trump's Twitter account and blocking account holders. *Id.* at

10   574-75. Twitter's conduct, and the general nature of the service, was not at issue.

11        Here, Plaintiff seeks to hold Twitter, a private company, liable for private conduct related

12   to its online platform. Courts have repeatedly held that the First Amendment does not apply to these

13   circumstances. *See, e.g.*, *Howard v. Am. Online, Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (AOL not

14   subject to First Amendment); *Freedom Watch*, 2019 WL 1201549, at *6 (Twitter and other online

15   platforms not subject to First Amendment); *Prager*, 2018 WL 1471939, at *8 (YouTube and

16   Google not subject to First Amendment); *Shulman v. Facebook.com*, 2017 WL 5129885, *4 (D.N.J.

17   Nov. 6, 2017) (Facebook not a state actor and "efforts to apply the First Amendment to Facebook

18   in Section 1983 claims have consistently failed"); *Kinderstart.com LLC v. Google, Inc.*, 2007 WL

19   831806, *13–15 (N.D. Cal. Mar. 16, 2007) (Google not subject to First Amendment).

20        **2.      The First Amendment Bars Plaintiff's Claims.**

21        Far from precluding Twitter from managing its services, the First Amendment *protects*

22   Twitter's right to decide what speech to allow on its platform. *See, e.g.*, *La'Tiejira v. Facebook,*

23   *Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (collecting cases and holding that Facebook has a

24   "First Amendment right to decide what to publish and what not to publish on its platform"); *Zhang*

25   *v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) (dismissing case where relief sought would

26   violate search engine's First Amendment rights). Plaintiff fails to engage with this argument,

27   instead arguing that Twitter cannot both claim First Amendment rights and status as a private entity.

28   Opp. at 14. Plaintiff's argument is meritless. Twitter can be—and is—both a private actor and an

1  entity with First Amendment rights; in fact, *most* individuals and entities are both private actors

2  and hold First Amendment rights. At bottom, because Twitter has a First Amendment right to

3  decide what speech to allow on its platform, Twitter cannot be held liable for suspending,

4  terminating, or otherwise regulating the content in Plaintiff's accounts.

5  **B.      The Communications Decency Act Also Bars Plaintiff's Claims.**

6          Plaintiff does not dispute that Twitter provides an interactive computer service or that the

7  content was posted by another information content provider (i.e., Plaintiff). Rather, he argues that

8  Twitter did not act as a publisher with respect to putative public fora of public officials' Twitter

9  accounts because "Twitter's only legitimate role" in those spaces "is as a participant (user)." Opp.

10  at 13. Plaintiff appears to contend that CDA immunity does not apply to online services if they are

11  used by public officials or those, like Plaintiff, that may seek to become public officials.

12          The CDA contains no such limitation. *See* 47 U.S.C. § 230(c)(1) ("*No provider* or user of

13  an interactive computer service shall be treated as the publisher or speaker of any information

14  provided by another information content provider." (emphasis added)). To the contrary, the CDA

15  recognizes that "[t]he Internet and other interactive computer services offer a forum for a true

16  diversity of political discourse," that Americans increasingly were "relying on interactive media

17  for a variety of political . . . services" and that interactive computer services include qualifying

18  "systems operated or services offered by libraries or educational institutions," both of which are

19  typically public. *Id.* § 230(a)(3), (a)(5), (f)(2).

20          Further, courts have recognized repeatedly that the CDA immunizes Twitter's decisions to

21  suspend or terminate accounts, irrespective of use of its services by current or potential would-be

22  public officials. *See, e.g.*, *Green v. YouTube, LLC*, No. 18-cv-203-PB, 2019 WL 1428890, at *2-3,

23  *6 (D.N.H. Mar. 13, 2019) (dismissing claims alleging that "Twitter deleted one or more of

24  [plaintiff]'s Tweets, and, on one occasion, deleted 500 or more of [plaintiff]'s followers" and

25  "engaged in 'shadowbanning' and cyberbullying" due to CDA immunity among other reasons),

26  *report and recommendation adopted*, 2019 WL 1428311 (D.N.H. Mar. 29, 2019); *DeLima v.

27  YouTube, LLC*, No. 17-cv-733-PB, 2018 WL 4473551, at *2, *7 (D.N.H. Aug. 30, 2018)

28  (dismissing claims alleging that Twitter "locked [plaintiff] out of her various accounts; closed her

1  accounts; denied her the ability to post some or all content; deleted subscribers, comments, and
2  view-counts relating to her accounts; placed false strikes on her accounts; stole or otherwise denied
3  [plaintiff] access to her "virtual property," and otherwise harassed her" based on CDA immunity
4  and other reasons (footnote omitted)), *report and recommendation adopted*, 2018 WL 4471721
5  (D.N.H. Sept. 18, 2018), *aff'd*, Nos. 18-1666, 18-1728, 18-1804, 18-1831, 18-1947, 18-2023, 2019
6  WL 1620756 (1st Cir. Apr. 3, 2019); *Mezey v. Twitter, Inc.*, No. 1:18-CV-21069-KMM, 2018 WL
7  5306769, at *1 (S.D. Fla. July 19, 2018) (CDA immunized Twitter against claim that it "unlawfully
8  suspended [plaintiff's] Twitter account"); *see also Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
9  144 F. Supp. 3d 1088, 1090 (N.D. Cal. 2015) (holding that blocking of plaintiff's Facebook page,
10 which promoted human rights in India, qualified as editorial discretion immunized by the CDA).

11     Plaintiff also asserts, incorrectly and without support, that the CDA does not apply to claims
12 for conversion, negligent infliction of emotional distress, or antitrust. Opp. at 13. This is false.
13 "[W]hat matters is not the name of the cause of action—[but] whether the cause of action inherently
14 requires the court to treat the defendant as the publisher or speaker of the content provided." *Barnes*
15 *v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009). "[C]ourts must ask whether the duty that
16 the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a
17 publisher or speaker. If it does, section 230(c)(1) precludes liability." *Id.* (citations omitted).

18     Indeed, courts regularly apply the CDA to bar claims under conversion and negligent
19 infliction of emotional distress. *See, e.g.*, *Caraccioli v. Facebook, Inc.*, No. 16-15610, 700 F. App'x
20 588, 590 (9th Cir. June 6, 2017) (affirming dismissal of negligent infliction of emotional distress
21 claims as barred by the CDA); *Franklin v. X Gear 101, LLC*, No. 17 Civ. 6452 (GBD) (GWG),
22 2018 WL 4103492, at *8 (S.D.N.Y. Aug. 28, 2018) (dismissing claims for conversion because they
23 are barred by the CDA). Further, the statute includes no exception to immunity for civil antitrust
24 claims. *See* 47 U.S.C. § 230(e). Where, as here, Plaintiff's argument rests on Twitter's conduct as
25 a publisher in regulating content posted by others on its platform, CDA immunity applies. *See* Opp.
26 at 10 (arguing that discovery would show that Twitter conspired to commit antitrust violations by
27 "using Stealth Tools to limit the reach of competing platform which have accounts on their service,
28 and to likewise use Stealth Tools against advocates of competing platforms").

1

**C.     Plaintiff's Opposition Underscores the Fatal Deficiencies in His Remaining Claims.**

2

**1.     Plaintiff's Federal Election Rules Claim Fails Because Twitter Is Not a Licensee and No Private Right of Action Exists for the Alleged Violation.**

3

4          Plaintiff's Opposition only clarifies that he has failed to state a claim under the Federal

5    Election Rules, 47 U.S.C. § 315. Plaintiff bases his claim on (1) the alleged existence of some

6    shared investors, donors, shareholders, and directors between Twitter and licensed broadcasting

7    companies; and (2) allegations that licensed broadcasting companies and their employees, donors,

8    shareholders, and executives use Twitter and have many followers. Opp. at 7. Neither provides any

9    basis to conclude that Twitter is a "licensee," or "the holder of a radio station license granted or

10   continued in force under authority of" chapter 5 of Title 47 of the U.S. Code, *see* 47 U.S.C.

11   § 153(30)—which is required before an entity is subject to the requirements of 47 U.S.C. § 315.

*See* 47 U.S.C. § 315 (imposing obligations on any "licensee").

12          Even if these deficiencies in Plaintiff's allegations could be cured (which they cannot), his

13   claim would still fail because (1) there is no private right of action for alleged violations of 47

14   U.S.C. § 315, which Plaintiff does not dispute and (2) the Federal Communications Commission,

15   not the federal district courts, have primary jurisdiction to enforce this and other "fairness"

16   provisions of the Communications Act. *See McCarthy v. Nat'l Broad. Co.*, 162 F.3d 1148 (2d Cir.

17   1998); *The Pen v. DC Radio Assets*, LLC, 181 F. Supp. 3d 49, 55 (D.D.C. 2014).

18

**2.     Plaintiff's Breach of Contract Claim Fails Because Twitter's Terms Expressly Reserve Its Discretion to Suspend Accounts.**

19

20          Plaintiff's breach of contract claim is a moving target. Despite relying solely on

21   unconscionability, illusory contracts, and a now-reversed trial court ruling from *Taylor v. Twitter*

22   in his breach of contract allegations, *see* Am. Compl. ¶¶ 18-20, Plaintiff now attempts to disclaim

23   these failed grounds for his claim. *See* Opp. at 8-9. Instead, Plaintiff now contends that his breach

24   of contract claim is supported by his "reasonable expectation that Defendant would not use Stealth

25   Tools to interfere with his Candidacy, his created Content/Public Forums, or participation in the

26   Public Forums of existing elected officials," which he contends were created by statements by

27   Twitter's Chief Executive Officer and its World Leaders policy. *Id.* at 7-8.

28

1    Notably, Plaintiff still has not alleged the existence of any agreement in which Twitter

2    undertook an obligation not to terminate or suspend accounts. Even if Plaintiff is correct that

3    Twitter's CEO stated "that social media access is a right and that his company is actually a public

4    utility like water or electricity," or "that Twitter is a public utility, a public square, and/or a Public

5    Forum," these are aspirational and express Twitter's mission, not an express or binding

6    commitment limiting its own discretion to suspend or terminate account holders. Opp. at 7-8.[3]

7    Further, contrary to Plaintiff's contention, the contract governing the relationship between

8    the parties is Twitter's Terms, not its blog posts or statements from its CEO. And Twitter's Terms,

9    which Plaintiff repeatedly agreed to by signing up for Twitter accounts, expressly enshrine

10   Twitter's discretion to terminate accounts for any reason. *See* Smith Decl. ¶¶ 2-4, 7-8; *id.*, Ex. C

11   § 8 ("We reserve the right at all times (but will not have an obligation) to . . . suspend or terminate

12   users . . . without liability to you."); *id.* § 10 ("We may suspend or terminate your accounts or cease

13   providing you with all or part of the Services at any time or for any reason . . . ."); *id.*, Ex. D § 4

14   ("We may also remove or refuse to distribute any Content on the Services, suspend or terminate

15   users, and reclaim usernames without liability to you."); *id.* ("We may suspend or terminate your

16   account or cease providing you with all or part of the Services at any time for any or no

17   reason . . . .").[4] Plaintiff's breach of contract claim therefore fails.

18   ### 3.    Plaintiff's Conversion Claim Fails to Allege Any Wrongful Act.

19   Plaintiff's Opposition reiterates his position that he owns the content in his Twitter accounts

20   and is entitled to "a direct refund of the value of Plaintiff's followers." Plaintiff is wrong that

21   Twitter's Motion "acknowledge[d] the followers are the property of the Plaintiff" or "admit[ted]

22   that Plaintiff is the rightful sole owner of his accounts." To the contrary, Twitter explained that

---

23   [3] Twitter's blog post titled "World Leaders on Twitter" (which Plaintiff refers to as Twitter's "World Leaders Policy") expresses only Twitter's "stance" on Tweets from world leaders, not

24   potential office holders. *See* https://blog.twitter.com/en_us/topics/company/2018/world-leaders-and-twitter.html. It says only that there may be negative consequences from "[b]locking a world

25   leader from Twitter or removing their controversial Tweets." The post also explains that "We review Tweets by leaders within the political context that defines them, and enforce our rules

26   accordingly," *id.* Twitter has discretion to enforce its rules even against world leaders.

     [4] Plaintiff also takes issue with updates to Twitter's Terms, contending they occurred "without his

27   permission, participation or knowledge." Opp. at 2. Even if this were true (it is not), Twitter has provided and relied on the versions of its Terms that were in effect at the time Plaintiff created the

28   subject accounts and agreed to the Terms, so any updates are irrelevant. *See* Smith Decl. ¶ 7.

---

1  Plaintiff cannot show a property interest in his accounts because Twitter's Terms provide that "[a]ll

2  right, title, and interest in and to the Services (excluding Content provided by users) are and will

3  remain the exclusive property of Twitter and its licensors." Mot. at 8 n.9.

4  But *even if* Plaintiff could make such a showing, he still has not stated a conversion claim

5  because he has not alleged any wrongful act by Twitter that interfered with Plaintiff's rights. *See*

6  *CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1079 (S.D. Cal. 2010)

7  (dismissing Plaintiffs' conversion claim because they "failed to plausibly allege that Defendant

8  wrongfully exercised dominion over [their] property" based on the terms of the underlying

9  contracts). Rather, the alleged "conversion" of Plaintiff's followers occurred when Twitter

10  suspended Plaintiff's Twitter's accounts, which it is permitted to do under its Terms and which

11  therefore is not wrongful. Plaintiff's Opposition fails to respond on this dispositive point.

12  **4.    Plaintiff's Antitrust Allegations Are Not Sufficient to State a Claim.**

13  Plaintiff fails to identify any allegations that would show intent to monopolize, specific

14  anticompetitive conduct, or causal antitrust injury—each of which is an independent, required

15  element of a monopolization or attempted monopolization claim under 15 U.S.C. § 2. *See Pac.*

16  *Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992). Rather, Plaintiff (1) asserts

17  that he intends to elicit testimony from various elected officials who Plaintiff contends have raised

18  antitrust concerns, (2) refers to alleged investigations of similar antitrust claims by the U.S.

19  Department of Justice and State Attorneys General, and (3) notes his allegations that "only 3

20  companies (controlling 2 paired brands each) control the market." Opp. at 10-11.

21  These allegations are not sufficient to state an antitrust claim. *See, e.g.*, *Freedom Watch,*

22  *Inc.*, 2019 WL 1201549, at *5 (dismissing plaintiffs' Section Two claims against Twitter and others

23  in part because, generally, "allegations of a shared monopoly do not state a viable § 2 claim");

24  *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1142 (N.D. Cal. 2015)

25  (dismissing antitrust claim where plaintiff "had not sufficiently pleaded that the alleged schemes,

26  whether independently or in combination, caused antitrust injury or foreclosed competition in a

27  substantial share of the relevant market"); *Prosterman v. Am. Airlines, Inc.*, No. 16-cv-02017-

28  MMC, 2016 WL 7157667, at *3 (N.D. Cal. Dec. 8, 2016) (dismissing antitrust claim where plaintiff

1  alleged "the domestic airline passenger industry is a tight oligopoly in that four carriers control

2  approximately 80 percent of the market" (internal quotation marks omitted)); *see also Person v.*

3  *Google, Inc.*, 346 F. App'x 230, 231 (9th Cir. 2009) (affirming dismissal of antitrust claim where

4  plaintiff "failed to plead facts sufficient to raise the allegations in his complaint that [defendant]

5  engaged in exclusionary, anticompetitive, or predatory behavior beyond a speculative level").

6      Having failed to allege any facts to support this claim, it should be dismissed and Plaintiff

7  therefore is not entitled to discovery on this claim (or any other). *See, e.g.*, *Ashcroft v. Iqbal*, 556

8  U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed

9  with nothing more than conclusions."); *Starr*, 652 F.3d at 1216.

10      **5.      Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.**

11      In his Opposition, Plaintiff appears to contend his negligent infliction of emotional distress

12  arises under a "bystander" theory, arguing that other Twitter account holders suffered harm similar

13  to what he alleged. But liability to a bystander attaches only if "the plaintiff: (1) is closely related

14  to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs

15  and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress

16  beyond that which would be anticipated in a disinterested witness." *Thing v. La Chusa*, 48 Cal. 3d

17  644, 647 (1989). Plaintiff has made no such allegations. And even if Plaintiff is asserting a "direct

18  victim" theory of negligent infliction of emotional distress, his claim still fails because he has not

19  alleged that he suffered the alleged distress as a result of Twitter's breach of a duty. *See Burgess v.*

20  *Superior Court*, 2 Cal. 4th 1064, 1074 (1992) (negligent infliction of emotional distress claim under

21  "direct victim" theory arises "in cases where a duty arising from a preexisting relationship is

22  negligently breached"). Plaintiff's negligent infliction of emotional distress claim therefore fails.

23      **6.      Plaintiff's Intentional Interference with Contractual Relations Claim Fails.**

24      Plaintiff's Opposition does not cure his failure to allege an existing economic relationship,

25  any intent on Twitter's part to disrupt any such relationship, or an independently wrongful act, all

26  of which are necessary elements to support an intentional interference claim. *See Korea Supply Co.*

27  *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 1158 (2003).

28      First, Plaintiff contends only that Twitter "effectively impeded" his "backers, political

1   donors and general voters . . . from supporting Plaintiff" and interfered with his ability to obtain

2   "new financial supporters/backers" through his Patreon business account. Opp. at 11. As an initial

3   matter, this is speculative, with proximate causation absent from the chain of logic: Plaintiff does

4   not claim that Twitter stopped anyone from donating anything, only that it may have been harder

5   for him to solicit donations. Further, Plaintiff effectively concedes his claim is based on an

6   expectation of forming *future* economic relationships, not interference with an *existing* economic

7   relationship. He relies on the alleged absence of *further* support from his backers, political donors,

8   and general voters, as well as his ability to obtain *new* financial supporters on Patreon.

9       Second, Plaintiff has failed to allege that Twitter *intended* to disrupt his economic

10  relationships. Rather, he contends that because he is a Republican and because Twitter and some

11  employees allegedly donate to the Democratic Party, "it was, and is, in [Twitter's] interests to

12  commit financial harms against Republicans." Opp. at 11. But there is a vast speculative leap

13  between employees allegedly holding different political beliefs and *intentionally* interfering with

14  economic relationships. Mere speculation cannot support a claim. *Iqbal*, 556 U.S. at 678 (holding

15  that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops

16  short of the line between possibility and plausibility of entitlement to relief").

17      Finally, terminating Plaintiffs' accounts was permissible under the Terms, so Plaintiff has

18  not and cannot allege any "independently wrongful act." *Korea Supply Co.*, 29 Cal.4th at 1164-65.

19          **7.     Plaintiff's Promissory Estoppel Claim Fails Because None of the Alleged
                    Promises Was Clear and Ambiguous and It Would Have Been Unreasonable**

20          **to Rely on Any Putative Promises Not to Suspend Accounts.**

21      Plaintiff's Opposition makes clear that his promissory estoppel claim relies on alleged

22  statements by Twitter's CEO that Twitter is a "free speech platform" and that "social media is 'a

23  right.'" Opp. at 12. But these statements are not a promise that is "clear and unambiguous in its

24  terms." *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976); *see also Ladas v.

25  Cal. State Auto Ass'n*, 19 Cal. App. 4th 761, 770 (1993) (a promise is enforceable only if it is

26  "definite enough that a court can determine the scope of the duty" and if "the limits of performance

27  [are] sufficiently defined to provide a rational basis for the assessment of damages"). General

28  statements about Twitter's commitment to certain free speech principles or social media being "a

1    right" are not clear and unambiguous promises not to suspend accounts.

2            Further, any reliance on such an alleged promise was not reasonable in light of Twitter's

3    express reservation of its rights to suspend or terminate accounts in its Terms. *See Joffe v. City of*

4    *Huntington park*, 201 Cal. App. 4th 492, 513 (whether reliance is reasonable may be decided as a

5    question of law if reasonable minds could come to only one conclusion on the basis of the facts

6    alleged); *cf. Kimbrell v. Twitter Inc.*, No. 18-CV-04144-PJH, 2018 WL 6025609, at *4 (N.D. Cal.

7    Nov. 16, 2018) (a reasonable consumer was not likely to believe that Twitter "did not retain the

8    right to suspend users who 'cross the line into abuse'" based on statements in Twitter's Rules that

9    Twitter "believe[s] in freedom of expression and open dialogue," particularly given that those same

10   Rules expressed that Twitter "prohibit[s] behavior that crosses the line into abuse").

11           For all these reasons, Plaintiff's promissory estoppel claim fails.

12   **D.     Brittain for Senate Should Be Dismissed as a Plaintiff.**

13           In Plaintiff's Opposition, he explains for the first time that plaintiff Brittain for Senate is a

14   "known pseudonym for the primary Plaintiff," Craig R. Brittain. Opp. at 12. If so, then only Mr.

15   Brittain should be party and plaintiff in this case. This concession creates an additional and

16   independent reason to dismiss Brittain for Senate's claims. *See also* Civil L.R. 3-9(b) ("A

17   corporation, unincorporated association, partnership or other such entity may appear only through

18   a member of the bar of this Court.").

19   **E.     Plaintiff's Evidence is Improper and Objectionable.**

20           Plaintiff also submitted 115 links to: (1) 82 online articles, ten nonprofit publications, three

21   academic publications, one blog entry, and content from a personal website (the "Online Articles");

22   (2) content from two Twitter accounts ("Account Content"); (3) one complaint filed against Twitter

23   in a different case ("Court Record"); (4) six videos, blog posts, and other content from government

24   websites ("Government Records"); (5) eight YouTube videos; and (6) one podcast.  Plaintiff also

25   submitted 53 separate exhibits containing screenshots of Twitter Account Content.

26       **1.     General Objections**

27           Twitter objects to Plaintiff's submission of evidence because a district court may not, "[a]s

28   a general rule . . . consider any material beyond the pleadings in ruling on a 12(b)(6) motion to

1  dismiss for failure to state a claim." *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 967

2  (N.D. Cal. 2010) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

3          This prohibition is subject to two exceptions. *Lee*, 250 F.3d at 688. First, a court may take

4  judicial notice of a "fact that is not subject to reasonable dispute because it is generally known

5  within the trial court's territorial jurisdiction or can be accurately and readily determined from

6  sources whose accuracy cannot reasonably be questioned." *Id.* at 689 (explaining that a court may

7  take judicial notice of "matters of public record"); Fed. R. Evid. 201(b). With respect to

8  publications, a court "may take judicial notice of publications introduced to indicate what was in

9  the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher*

10  *v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotations

11  omitted); *see also Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018)

12  (explaining that "courts cannot take judicial notice of the contents of documents for the truth of the

13  matters asserted therein when the facts are disputed") (internal citation and quotation omitted).

14  Second, a court may "consider materials incorporated into the complaint if the complaint

15  necessarily relies upon a document or the contents of the document are alleged in a complaint, the

16  document's authenticity is not in question and there are no disputed issues as to the document's

17  relevance." *Rollins*, 338 F. Supp. 3d at1031 (N.D. Cal. 2018) (internal citations and quotations

18  omitted). The second exception applies "even if the plaintiff does not explicitly allege the contents

19  of that document in the complaint." *Id.*

20          Except for the Government Records, Plaintiff cannot rely on the first exception because the

21  accuracy of the Online Articles, Account Content, YouTube videos and other online content can be

22  reasonably questioned. *See Rollins*, 338 F. Supp. 3d at 1032-33 (unlike government agency

23  websites, which "have often been treated as proper subjects for judicial notice," records of private

24  parties and their websites "are not inherently reliable, and courts should be cautious before taking

25  judicial notice of documents simply because they were published on a website."). In addition, to

26  the extent that Plaintiff is requesting the court to take judicial notice of the truth of the online content

27  he submitted as evidence, this is prohibited under Federal Rule of Evidence 201. *Hadley v. Kellogg*

28  *Sales Co.*, 273 F. Supp. 3d 1052, 1061 (N.D. Cal. 2017) (denying judicial notice request for certain

1   documents because "Defendant's arguments indicate that Defendant is requesting the Court to take

2   judicial notice of the truth of the content of these documents, not merely of their existence").

3        In addition, Plaintiff cannot rely on the second exception because the authenticity and

4   relevance of Plaintiff's extrinsic evidence, which are available on public websites, are unclear. *See*

5   *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1165 (N.D. Cal. 2018), *appeal filed*, No. 18-16700

6   (9th Cir. filed Sept. 10, 2018) (denying judicial notice request for website printouts of a U.S.

7   Senator's letter to Google's CEO regarding terrorist content on YouTube, a transcript of a hearing

8   before the UK's Parliament at which a Google representative testified, and written evidence

9   submitted by Google to the same committee because the plaintiffs failed to authenticate the

10  printouts and establish they are matters of public record); *Voip-Pal.Com, Inc. v. Apple Inc.*, No. 18-

11  CV-04523-LHK, 2019 WL 1332762, at *15 (N.D. Cal. Mar. 25, 2019), *appeal filed*, No. 19-1813

12  (Fed. Cir. filed Apr. 26, 2019) (denying judicial notice request for a YouTube video because "[t]he

13  Court finds that the contents of the YouTube video are unverified and unsubstantiated, and are

14  therefore subject to reasonable dispute."); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1206

15  (N.D. Cal. 2014) (denying judicial notice request for a New York Times blog article about the

16  underlying litigation because "[t]his document is not cited or referenced in the [complaint]" and

17  the "[defendant] disputes the accuracy of the contents of the article").

18        **a.**    **Specific Objections to Each Category of Evidence**

19        **(i)**    **Online Articles**

20       Twitter objects to the Online Articles because they (1) are irrelevant—they do not relate to

21  Plaintiff's claims, Fed. R. Evid. 401; (2) are inadmissible hearsay that is not subject to any

22  exception, to the extent they are offered to prove the truth of the matter asserted, Fed. R. Evid. 801;

23  (3) are impermissible opinion testimony by a lay witness based on speculation and insufficient

24  personal knowledge, Fed. R. Evid. 701; and (4) lack foundation.

25        **(ii)**    **Account Content, YouTube Videos, and Podcast**

26       Twitter objects to the Account Content, YouTube videos, and Podcast because they (1) are

27  irrelevant—they do not relate to Plaintiff's claims, Fed. R. Evid. 401; (2) are inadmissible hearsay

28  that is not subject to any exception, to the extent they are offered to prove the truth of the matter

1    asserted, Fed. R. Evid. 801; (3) are impermissible opinion testimony by a lay witness based on
2    speculation and insufficient personal knowledge, Fed. R. Evid. 701; and (4) lack foundation.

3                       **(iii)    Government Records and Court Record**

4    Twitter objects to the Government Records and Court Record because they (1) are
5    irrelevant—they do not relate to Plaintiff's claims, Fed. R. Evid. 401; (2) are inadmissible hearsay
6    that is not subject to any exception, to the extent they are offered to prove the truth of the matter
7    asserted, Fed. R. Evid. 801; and (3) lack foundation.

8    **F.      Plaintiff Should Be Denied Leave to Amend.**

9    Plaintiff does not seek leave to amend, nor should he be granted a further opportunity to
10   amend his complaint. Permitting Plaintiff to amend his complaint for a second time would be an
11   exercise in futility because Plaintiff's claims all have the same incurable defect: that Twitter cannot
12   be liable for the exercise of its editorial discretion in terminating Plaintiff's accounts. Court
13   routinely dismiss with prejudice similar claims for the same reason. *See, e.g.*, *Dehen v. Does 1-100*,
14   No. 17cv198-LAB (WCG), 2018 WL 4502336, at *4 (S.D. Cal. Sept. 19, 2018) (dismissing *pro se*
15   plaintiff's complaint against Twitter without leave to amend because the claims targeted content
16   posted by third parties); *Frenken v. Hunter*, No. 17-cv-02667-HSG, 2018 WL 1964893, at *4 (N.D.
17   Cal. Apr. 26, 2018) (same); *Mezey*, 2018 WL 5306769, at *2 (same).

18                       **III.    CONCLUSION**

19   For the foregoing reasons, and those stated in the Motion, Twitter respectfully requests that
20   the Court dismiss Plaintiff's claims with prejudice and deny Plaintiff leave to amend.

21
22   DATED:  May 3, 2019                          **PERKINS COIE LLP**
23
24                                               By:___*/s/ Julie E. Schwartz*_____
                                                    Julie E. Schwartz, Bar No. 260624
25                                                  JSchwartz@perkinscoie.com

26                                               Attorneys for Defendant
                                                 Twitter, Inc.
27
28