UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG R. BRITTAIN, AN INDIVIDUAL AND U.S. SENATE CANDIDATE IN ARIZONA; AND BRITTAIN FOR U.S. SENATE, A CAMPAIGN COMMITTEE,<br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC., A CALIFORNIA CORPORATION,<br><br>Defendant. | CASE NO. 19-cv-00114-YGR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>Re: Dkt. No. 43 |

Plaintiffs Craig R. Brittain, an individual and U.S. Senate Candidate in Arizona and Brittain for U.S. Senate, a Campaign Committee (collectively, "Brittain") bring this action *pro se*[1] against defendant Twitter, Inc. ("Twitter") related to Twitter's termination of four accounts belonging to Brittain. Brittain asserts eight causes of action against Twitter: (1) violation of the First Amendment; (2) violation of federal election law; (3) breach of contract; (4) conversion, (5) violation of the antitrust; (6) negligent infliction of emotional distress; (7) tortious interference;

---

[1] Plaintiff Craig R. Brittain may not represent Brittain for U.S. Senate, a Campaign Committee in this action. "It is a longstanding rule that corporations and other unincorporated associations must appear in court through an attorney." *D-Beam Ltd. P'Ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004) (internal quotation marks and brackets omitted). Moreover, the Northern District's local rules provide that "[a] corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court." Civ. Local R. 3-9(b). Brittain argues that his Senate Campaign Committee has the same "material interest" as the individual plaintiff, and that "Brittain for U.S. Senate" is a pseudonym for the primary plaintiff. (Dkt. No. 63 ("Opp.") at 12–13.) Brittain fails to persuade. In general, courts permit plaintiffs to use pseudonyms in rare cases to protect the plaintiff's identity, not to add a party to the litigation. *See United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008) ("In the unusual case, [courts] consider whether pseudonymity is necessary to protect a person from injury or harassment.") (internal quotation marks omitted). Accordingly, plaintiff Brittain for U.S. Senate, a Campaign Committee **SHALL** obtain counsel by **July 2, 2019**. Failure to do so may result in dismissal as to plaintiff Brittain for U.S. Senate.

and (8) promissory estoppel.  (Dkt. No. 13 ("FAC").)

Now before the Court is Twitter's motion to dismiss Brittain's FAC pursuant to Rule 12(b)(6).  (Dkt. No. 43 ("Motion").)  Having carefully reviewed the papers submitted, and for the reasons set forth more fully below, the Court **GRANTS** Twitter's motion to dismiss.

## I. BACKGROUND

Brittain alleges that between February 1 and May 23, 2018, Twitter suspended four accounts belonging to Brittain: @CraigRBrittain, @AuditTheMedia, @SenatorBrittain, and @Brittain4Senate (collectively, the "Brittain Accounts").  (FAC ¶¶ 4, 10, 11, 14.)  Brittain does not provide any facts related to why Twitter suspended his accounts. (*See, generally*, FAC.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).  Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Thus, a motion to dismiss will be granted if the complaint does not proffer enough facts on its face to nudge the plaintiff's "claims across the line from conceivable to plausible[.]"  *See id.* at 570.

If a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III. DISCUSSION

Twitter moves to dismiss on multiple grounds, including that section 230(c)(1) of the Communication Decency Act ("CDA"), 47 U.S.C. § 230, renders it immune from liability for each of Brittain's claims that seek to treat it as a publisher of third-party content.  Because the Court finds this argument is dispositive as to most causes of action, the Court begins there.

### A. The Communications Decency Act

Section 230(c)(1) of the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Accordingly, the CDA protects from liability (1) a provider of an interactive computer service (2) whom a plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009). "[A]n 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). The CDA provides an affirmative defense that protects a service provider from liability for providing access to offensive or objectionable content that was created by another but does not protect a service provider for providing access to content that the service provider itself created. *Barnes*, 570 F.3d at 1101–02. If an "interactive computer service" is responsible for the "creation or development of" the particular information at issue, then the service provider is an "information content provider" unprotected by the CDA. *Carafano*, 339 F.3d at 1124–25.

#### 1. Twitter provides an interactive computer service.

An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). The CDA defines an "information content provider" as any "person or entity responsible, in whole or in part, for the creation or development of information provided through" the interactive computer service. *Id.* § 230(f)(3). Courts adopt "a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.'" *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).

The Court finds that Twitter qualifies as an interactive computer service. *See Dehen v. Does 1-100*, No. 17cv198-LAB (WCG), 2018 WL 4502336, at *3 (S.D. Cal. Sept. 19, 2018) (finding that "Twitter is an interactive computer service"); *Fields v. Twitter, Inc.*, 200 F.Supp.3d 964, 969 (N.D. Cal. 2016) (treating Twitter as an interactive computer service); *Frenken v. Hunter*, No. 17-cv-02667-HSG, 2018 WL 1964893, at *2 (N.D. Cal. Apr. 26, 2018) (same).

3

### 2. Brittain's claims treat Twitter as a publisher.

The issue for purposes of determining whether a defendant is immune from suit under the CDA "is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. Under the CDA, a publisher's activity generally "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.* at 1102. "[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Id.* at 1103. In other words, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under [CDA] section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc).

In *Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2016 WL 6540452 (N.D. Cal. Nov. 2, 2016), the court considered whether the CDA immunized YouTube, LLC ("YouTube") from claims associated with its removal of a music video, "Cowgirl." The court first found that YouTube provides an interactive computer service and that the "Cowgirl" video was "information provided by another information content provider." *Id.* at *7. The court then found that plaintiff's tort claim for intentional interference with prospective economic advantage was precluded by section 230(c)(1) because the claim "seeks to hold defendants liable for an action that is quintessentially that of a publisher." *Id.* at *8 (internal quotation marks omitted). However, the CDA did not preclude plaintiff's claim for breach of the implied covenant of good faith and fair dealing because the source of liability was defendants' contractual obligation to plaintiff as opposed to defendants' publisher status. *Id.*; *see also Lancaster v. Alphabet Inc.*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (finding that the CDA precluded the plaintiff from asserting "a claim based on Defendants' removal of her videos."). [2]

---

[2] *See also Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1090 (N.D. Cal. 2015) (holding that blocking of plaintiff's Facebook page, promoting human rights in India, qualified as editorial discretion immunized by the CDA), *aff'd*, 697 F.App'x 526 (9th Cir. 2017); *DeLima v. Youtube, LLC*, No. 17-cv-733-PB, 2018 WL 4473551, at *2, *7 (D.N.H. Aug.

4

Twitter argues that Brittain's claims "ultimately arise from Twitter's alleged decision to suspend" the Brittain Accounts and therefore seek to treat Twitter as a publisher under the CDA. (Motion at 15.) In response, Brittain argues that Twitter does not act as a publisher because the company's "only legitimate role in regards to these Public Forums is as a participant (user)." (Opp. at 13.) The Court agrees with Twitter. Brittain's claims against Twitter, except his claim for violation of antitrust laws, arise out of Twitter's deletion of the Brittain Accounts: (1) violation of the First Amendment; (2) violation of federal election law; (3) breach of contract; (4) conversion, (5) negligent infliction of emotional distress; (6) tortious interference; and (7) promissory estoppel. (*See generally* FAC ¶¶ 13–22, 25–31.) Accordingly, the Court finds that each of Brittain's claims against Twitter, except for his antitrust violation claim, seeks to treat Twitter as a publisher.

### 3. Brittain provided the information content for the Brittain Accounts.

The Brittain Accounts qualify as "information provided by another information content provider." Brittain expressly acknowledges that he, not Twitter, created and operated the accounts *See Barnes*, 570 F.3d at 1102 & n.6 ("The statute also tells us that this term 'means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.'") (quoting 47 U.S.C. § 230(f)(3)). Accordingly, the Court finds that all but Brittain's antitrust claim are barred by Section 230(c)(1) of the CDA. Because plaintiff cannot cure this defect, the Court **DISMISSES** these claims with prejudice.

---

30, 2018) (dismissing claims alleging that Twitter "locked [plaintiff] out of her various accounts; closed her accounts; denied her ability to post some or all content; deleted subscribers, comments, and view-counts relating to her accounts; placed false strikes on her accounts; stole or otherwise denied [plaintiff] access to her "virtual property," and otherwise harassed her" based on CDA immunity and other reasons (footnote omitted)), *report and recommendation adopted*, 2018 WL 4471721 (D.N.H. Sept. 18, 2018), *aff'd*, Nos. 18-1666, 18-1728, 18-1804, 18-1831, 18-1947, 18-2023, 2019 WL 1620756 (1st Cir. Apr. 3, 2019); *Green v. Youtube, LLC*, No. 18-cv-203-PB, 2019 WL 1428890, at *2-3, 6 (D.N.H. Mar. 13, 2019) (dismissing claims alleging that "Twitter deleted one or more of [plaintiff]'s Tweets, and, on one occasion, deleted 500 or more of [plaintiff]'s followers" and "engaged in 'shadowbanning' and 'cyberbullying" due to CDA immunity among other reasons), *report and recommendation adopted,* 2019 WL 1428311 (D.N.H. Mar. 29. 2019); *Mezey v. Twitter, Inc.*, No. 1:18-CV-21069-KMM, 2018 WL 5306769, at 1 (S.D. Fla. July 19, 2018) (CDA immunized Twitter against claim that it "unlawfully suspended [plaintiff's] Twitter account").

### B. Brittain's Antitrust Claim

Brittain alleges that "[d]efendant violated 15 U.S. Code § 2 by engaging or attempting to engage in anticompetitive practices, evident by maintaining market control and profitability in spite of the lack of a superior product and conditions which would bankrupt a non-monopoly. Therefore Twitter must be reorganized." (FAC ¶ 24.) The section to which Brittain cites provides that monopolization, or attempted monopolization, and conspiracy monopolize or attempt to monopolize constitute felonies punishable by a fine not exceeding $100,000,000 for a corporation or $1,000,000 for a natural person, or by imprisonment not exceeding 10 years. *See* 15 U.S.C. § 2.

Monopolization requires: "(1) [p]ossession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992) (internal citation omitted). Attempted monopolization requires: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Id.* Moreover, in antitrust claims, the Supreme Court has required a heightened pleading standard:

> In applying these general standards to a § 1 [Sherman Act] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to inter an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement . . . . [A]n allegation of parallel conduct and a bar assertion of conspiracy will not suffice.

*Twombly*, 550 U.S. at 556-57. "This is because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff opportunity to extort large settlements even where he does not have much of a case." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir 2008). Accordingly, the Court must act as a gatekeeper.

Brittian alleges that Twitter, along with "Facebook/Instagram" and "YouTube/Google," control a combined 90% of the social media network market" and that "the lack of new major players in the market is a direct result of anticompetitive practices used by these three major players to illegally monopolize the social media networking market segment into violation of the Sherman Act." (FAC ¶ 6.) Brittain also contends that "Twitter does not possess superior products

6

and has maintained profitability in spite of actions which would otherwise bankrupt a company, to the point of being able to purchase any new competitor's business for itself." (*Id.*) Finally, Brittain avers that "[t]hese anticompetitive actions include deceptively and illegally limiting users who reference new/competing networks and/or utilize Third Party API services, and exaggerating their own stock values/prices (Porter v. Tiwtter et al.)." (*Id.*) Based upon these allegations, Brittain contends that "Twitter must be reorganized." (*Id.*)

At most, these allegations support a contention that Twitter and others in the market have engaged in conscious parallelism, which is not actionable. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[C]onduct [that is] as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy."); *see also Prosterman v. Am. Airlines, Inc.*, No. 16-cv-02017-MMC, 2016 WL 7157667, at *3 (N.D. Cal. Dec. 8, 2016) (dismissing a similar claim where plaintiff alleged "the domestic airline passenger industry is a tight oligopoly in that four carriers control approximately 80 percent of the market").

Moreover, Brittain lacks standing to bring his antitrust claim. To satisfy the antitrust-injury requirement mentioned above, "a plaintiff must show 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1066 (9th Cir. 2015) (quoting *Glenn Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1007-08 (9th Cir. 2003)). Brittain's allegation that he lost followers as a result of Twitter's actions does not comport with either aspect of that requirement. Therefore, the Court finds that Brittain has failed to state an antitrust claim. Although Brittain's complaint does not suggest that plaintiffs could allege an antitrust cause of action, out of an abundance of caution, the Court affords Brittain leave to amend with respect to this claim and **DISMISSES** Brittain's antitrust claim without prejudice.

IV. **CONCLUSION**

While the Court can understand the frustration which may occur if a person's Twitter account is suspended, unless a legal cause of action can be articulated, a lawsuit cannot be sustained. Nor is the person entitled to discovery on the general issues upon which the complaint

is based, unless a legal claim can be stated.  Here, the complaint is fundamentally flawed.  Therefore, and for the foregoing reasons, the Court **GRANTS** defendant's motion to dismiss and **DISMISSES** Brittain's complaint.  The Court affords Brittain leave to amend with respect to his antitrust claim.  To the extent that Brittain has a basis for filing a second amended complaint, he must do so by **July 9, 2019**.  Twitter shall respond by no later than **July 30, 2019**.  Failure to do so will result in dismissal of the complaint in its entirety.

This Order terminates Docket Number 43.

**IT IS SO ORDERED.**

Dated: June 10, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**